## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:22-cv-1070

**Stanton Meats, Krestina Coombs, David Davis, Brian Donovan, Chris Gallegos, Destiny Glantz, Cameron Harris, Julie Anne Neil, Andrez Rios, Jared Whitaker and William Wulf,**

       Plaintiffs,

v.

**Ridley's Family Markets, Inc.,**

       Defendant.

_____

### PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

_____

| | Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|---|
| 1 | Defendant Ridley's Family Markets, Inc. ("Ridley's"), is a family-owned chain of supermarkets and other retail stores headquartered in Twin Falls, Idaho, and operating stores in Idaho, Wyoming, Utah, Nevada, and Colorado. (Declaration of Donald Mark Ridley ("Ridley Decl.") at ¶ 2. A true and correct copy of the Ridley Decl. is attached hereto as Exhibit 1.) | Undisputed. | |
| 2 | Each Ridley's store is managed by a Store Director and an Assistant Store Manager ("ASM") (ASMs are sometimes referred to as Assistant Store Directors or "ASDs" and those terms are used interchangeably). Along with the Store Director, the ASM is responsible for running the supermarket to | Disputed. Assistant Store Managers ("ASM") at Ridley's stores do not manage all aspects of the store. They do not do scheduling, hiring, firing, setting pays, or | |

Page 1 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | |
|---|---|---|
| | which they are assigned. Together they manage all aspects of the store including without limitation managing the store's employees and overseeing all aspects of the efficient operation of their supermarket. This is the ASM's primary duty and responsibility, and the reason they were hired. This includes being aware of and observing what tasks need to be done, directing employees in completing those necessary tasks, stepping in to assist in those tasks as needed, and overseeing all other administrative tasks to ensure a well-managed store and a positive customer experience. (Ridley Decl., ¶ 3.) | discipline or evaluate other employees. Their primary duties, and the majority of their work is manual labor, such as stocking shelves, setting displays, helping as the cashiers, unloading freight, helping customers, ordering the groceries, or cleaning the store. (*See* Declaration of Stanton Meats ("Meats Decl.") at ¶ 7-32; Declaration of Brian Donovan ("Donovan Decl.") at ¶ 7-31; Declaration of Cameron Harris ("Harris Decl.") at ¶ 7-32; Declaration of Andrez Rios ("Rios Decl.") at ¶ 7-32; and Declaration of Jared Whitaker ("Whitaker Decl.") at ¶ 7-32 (collectively "All Decl.") |
| 3 | Store Directors and ASM's work closely together to manage the store to which they have been assigned. These two positions often work alternating schedules, so there are times that they are at the store together, as well as times when either is the senior manager on site, with oversight and supervision over the entire store. For the ASM this usually constitutes approximately 30% of their time. Even when both the Store Director and the ASM are at the store, both are nevertheless involved in the management of all aspects of the store to which they are assigned, and ASM's typically manage the center store operations and employees (typically consisting of grocery, dairy, general merchandise and frozen foods). (Ridley Decl., ¶ 4.) | Disputed. ASM at Ridley's stores do not manage all aspects of the store. They do not do scheduling, hiring, firing, setting pays, or discipline or evaluate other employees. Their primary duties, and the majority of their work is manual labor, such as stocking shelves, setting displays, helping as the cashiers, unloading freight, helping customers, ordering the groceries, or cleaning the store. *See* All Decl. at ¶ 7-32. |

Page 2 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| 4 | For ASMs specifically, this includes without limitation being substantively involved in the hiring and firing process by making suggestions and recommendations, being involved in the employee disciplinary process by providing day-to-day coaching and guidance and giving advice and suggestions for formal discipline, being involved in the employee evaluation process by either directly evaluating employees under their supervision or with whom they regularly interact, or by providing input to the Store Director for such employees, and being involved in the pay and promotion process by providing suggestions and advice regarding employees under their supervision or with whom they regularly interact. (Ridley Decl., ¶ 5.) | Disputed. ASM do not do scheduling, hiring, firing, setting pays, or discipline or evaluate other employees. Their primary duties, and the majority of their work is manual labor, such as stocking shelves, setting displays, helping as the cashiers, unloading freight, helping customers, ordering the groceries, or cleaning the store. *Id.* | |
|---|---|---|---|
| 5 | This also involves various administrative tasks including without limitation, ordering store inventory, opening and/or closing and securing the store, making various financial reports, responsibility for merchandising and displays, responsibility for the physical facility, counting and securing the tills, making bank deposits, and ensuring an efficient store operation and positive customer experience, all of which require the ASM to exercise independent judgment and thought. (Ridley Decl., ¶ 6.) | Disputed. ASM had only limited personal management responsibilities. *Id.* at ¶ 8. | |
| 6 | While ASMs are expected to do whatever is needed to keep the store running efficiently, and will often perform the same tasks as other hourly employees, such as stocking shelves, running the cash registers, or unloading freight, they never lose their primary responsibility of managing and ensuring an efficient operation of the store. (Ridley Decl., ¶ 7.) | Disputed. ASMs' primary duty is manual labor, such as stocking shelves, setting displays, helping as the cashiers, unloading freight, helping customers, ordering the groceries, or cleaning the store. *Id.* at ¶ 7. | |
| 7 | ASM's are paid on a salary basis in an amount substantially more than the hourly employees that they supervise. For | Undisputed. | |

Page 3 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | | |
|---|---|---|---|
| | example, Plaintiff Stanton Meats, who held various hourly positions with Ridley's, earned between $5.15 and $9.60 per hour as an hourly employee ($206-$384 per full-time week), but as an ASM was started at $900 per week and was paid $1,087.50 per week at the time of his resignation. This was typical of all ASMs at the time. ASM's are also eligible for a bonus largely based on the financial results of the store they are responsible for, which the hourly employees they supervise are not. During all times relevant to this case, all of the Plaintiffs in this case were paid more than $684 per week. (Ridley Decl., ¶ 8.) | | |
| 8 | The decision to pay ASMs on a salary basis was made many years ago based upon these employees' duties, and following industry standards. Other than the instant lawsuit, and the related *Esparsen* case which started out as a collective action, Ridley's decision to pay ASMs on a salary basis has never been challenged, questioned, or found to be inappropriate or illegal. (Ridley Decl., ¶ 9.) | Objection. Plaintiff cannot state whether or not Defendant's decision to pay ASMs on a salary basis was challenged in other cases other than the instant lawsuit, and the related *Esparsen* case. | |
| 9 | Plaintiffs were all ASMs of Ridley's, and were originally part of an earlier failed attempt to bring an FLSA collective against Ridley's under the case *Esparsen v. Ridley's Family Markets, Inc.*, Case No. 1:18-cv-01556-RM currently pending before Judge Moore of this Court. (*See* First Amended and Substituted Complaint ("Compl."), Dkt. 9, ¶¶ 39, 73-74.) | Undisputed. | |
| 10 | Each Plaintiff filed a notice of consent in the *Esparsen* case. (Compl., ¶ 73.) | Undisputed. | |
| 11 | In particular, Plaintiff Davis filed his consent on 4/14/20; Gallegos filed his consent on 4/6/20; Neil filed her consent on 4/14/20; Wulf filed his consent on 4/13/20; and Donovan filed his consent on 4/24/20. (Compl., ¶ 76.) | Undisputed. | |
| 12 | During his last week working for Ridley's, Mr. Donovan did not work at all on April 24 or April 25, 2018, only worked 5 hours and 20 minutes on April 26, 2018, and only | Undisputed. | |

Page 4 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | | |
|---|---|---|---|
| | worked 26 total hours for that entire week. (Ridley Decl., ¶ 10.) | | |
| 13 | Plaintiff William Wulf worked for Ridley's for one week, from September 18 through September 24, 2016. (Deposition of William Wulf ("Wulf Dep.") at 10:14-12:22 (the cited portions of the Wulf Dep. are attached as Exhibit 2).) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Wulf's claim, based on the statute of limitations, factual assertions regarding Plaintiff Wulf are irrelevant. | |
| 14 | Stanton Meats ("**Meats**") was first employed by Ridley's in June of 2005 as a bagger at the Hyrum, Utah store, and held various positions over a several year period. Meats was promoted to Assistant Manager at Ridley's Midway, Utah store in April of 2015. He worked in Midway until his transfer to Ridley's Highland, Utah store in September, 2016, where he was also the ASM. In January, 2017, he became the ASM in Ridley's Pinedale, Wyoming store. (Deposition of Stanton Meats ("Meats Dep.") at 24:15-19; 30:14-17; 32:8-13; 33:11-22 (the cited portions of the Meats Dep. are attached as Exhibit 3).) | Undisputed. | |
| 15 | As ASM, Meats was responsible for making sure the store functioned efficiently. He walked the store looking for and solving problems as needed, helping customers and employees, and doing whatever needed done. (*Id.* at 29:25-30:4; 39:6-11; 42:21-24; 52:14-17; 61:4-8.) | Undisputed. | |
| 16 | Meats worked alongside a Store Director, though their schedules were not identical, such that Meats was the senior manager onsite for two to three hours each day, and one to two full days a week, during which time the entire store and its employees would fall under his supervision. (*Id.* at 35:20-36:8.) | Disputed. Meats was the senior manager on-site during these hours, however, he had to wait for the Store Director with major decisions. Meats Decl. at ¶ 25.) | |
| 17 | Nevertheless, even when the Store | Disputed. Meats did not | |

Page 5 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | Director was there, Meats was in charge of the "center store" operations and employees. (*Id.* at 28:14-18.) | have the final say on anything. (Deposition of Stanton Meats ("Meats Dep.") at 28:11-18.) | |
| 18 | There were typically two to ten center store employees present on any given day. Meats supervised these employees, made sure they had what they needed, answered their questions, instructed them, listened to their complaints, and stepped in to help as needed. (*Id.* at 28:19-25; 29:18-24; 39:1-5; 40:17-20; 41:12-24.) | Disputed. Meats directed complaints to the Store Director. Meats did not have the final say on anything (*Id.* at 28:11-18; 40:25; 41:1-6) | |
| 19 | Meats' duties and responsibilities with regard to employees included scheduling, training and providing feedback to employees, delegating and directing work, assigning specific tasks, and employee discipline. (*Id.* at 39:17-40:1; 41:25-42:16, 44:17-45:9; 49:3-18; 52:20-53:2). | Disputed. Meats had to make sure the schedules were approved by the Store Director. Meats mostly just entered the schedule prepared by the Store Director into the system. Meats did not evaluate or discipline other employees. (*Id.* at 39:17-40:12; 43:16-44:7; 44:13-16) | |
| 20 | As an ASM, Meats participated in the employee evaluation process, sitting in on formal evaluations, and preparing or reviewing evaluation forms, or printing them for the store director. (*Id.* at 42:25-44:12.) He would occasionally provide advice to the store director on pay rates and raises. (*Id.* at 47:15-48:3.)  He was also asked "a couple of times" to provide feedback on the promotions of employees. (*Id.* at 48:4-15.) | Disputed. Meats was present at these meetings to be a witness only. (*Id.* at 44:2-7; 48:4-7) | |
| 21 | He was also involved in the hiring process, reviewing applications, sitting in on interviews, asking questions, and afterwards discussing the applicant with the store director. (*Id.* at 45:17-46:6.)  He conducted several interviews on his own when the store director was absent. (*Id.* at 46:7-13.)  He also did an initial screening of applicants, sorting job applicants into two piles, one to be interviewed and one | Disputed. Meats was only involved when asked, which was not frequent and did not make any hiring decisions. (*Id.* at 46:19-47:11.); Meats Decl. at ¶ 12-32. | |

Page 6 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | | |
|---|---|---|---|
| | not to be interviewed. (*Id.* at 47:1-14.) | | |
| 22 | Meats' duties and responsibilities also included ordering store product, and merchandising. (*Id.* at 38:20-21.) He worked with the store manager and the grocery manager to decide on particular displays and what product was needed for the displays; he wrote grocery orders quite frequently, and also monitored whether purchases were being kept low as compared to sales, to ensure the store was making money. (*Id.* at 49:21-52:3.) Meats gave input as to where products would be displayed or what products would be put on the shelves and their location on the shelves. (*Id. at* 53:5-9.) He also had responsibility over signage and if signage were missing, Meats would direct the appropriate employee to fix it. (*Id.* at 53:24-54:8.) | Disputed. Meats was only involved in the process, not supervising it. The corporate or the Store Director made those decisions. (Meats Dep. at 50:12-19) | |
| 23 | As ASM, Meats opened and/or closed the store, depending on his schedule. As part of opening the store, Meats used the computer in the managers' office to enter the sales from the previous day. He also made the cash deposit to deliver to the bank and checked the email for any necessary communications. (*Id.* at 37:16-38:16.) | Undisputed. | |
| 24 | As ASM, Meats had responsibilities for employee and customer safety. When an employee or customer got injured, Meats would fill out an accident report, notify the store director, and notify the owner, Mark Ridley. Meats recalled filling out "a couple" of accident reports. Meats was responsible for addressing hazards, either delegating the work to someone or doing it himself, and was responsible for enforcing employee safety policies. Meats also filled out workers' compensation forms whenever employees got hurt. (*Id.* at 54:9-55:21; 58:8-12.) | Undisputed. | |
| 25 | As ASM, Meats was responsible for aspects of store security. He had a set of keys and opened or closed the building | Undisputed. | |

Page 7 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | two or three times a week. He had access to the store safe. If he were opening the store, he would verify the cash count from the closing manager, take the tills out of the safe, and put them in the registers. If he were closing, he would count down the tills, prepare a deposit for the next morning, and have a final count for the safe for the day. (*Id.* at 55:25-57:20.) In the Pinedale store, Meats was also responsible for making sure the sporting goods or hardware manager locked the firearms up at night. (*Id.* at 57:21-58:4.) | | |
| 26 | Various of the stores he worked at had store-specific features, such as a gas station, a U-Haul rental, a Subway restaurant, a post-office, or a pizzeria. As ASM, Meats was trained on those store-specific responsibilities. For example, in one store, Meats' had some responsibilities for fuel usage and U-Haul reports; for the store with a Subway he had responsibility for various Subway reports; for the store with a post-office he trained on processing packages received from customers. (*Id.* at 26:22-27:23; 31:18-32:1.) | Disputed. Meats was performing these duties when the Store Director was not available. (*See e.g. id.* at 27:12-15) | |
| 27 | Meats attended weekly conference calls with corporate as often as he could, taking notes, and disseminating information to other employees. Meats actively participated in department head meetings, provided input into areas he had knowledge of. (*Id.* at 59:6-60:24.) | Disputed. Meats was simply present at the meetings. The meetings were conducted by the Store Director and Meats did not provide any input. (*See e.g. id.* at 59:19-60:21) | |
| 28 | Meat's last day at Ridley's was May 2, 2019. (*Id.*, 64:14-16.) | Undisputed. | |
| 29 | Krestina Coombs ("**Coombs**") is a former employee in Ridley's Hyrum, Utah store, where she held a variety of positions over her 11-year career, including deli clerk, closing night manager, grocery manager, two stints as Assistant Manager (first in January, 2016-October, 2017, and again in August 2018-December, 2018), and store director (December, 2018-March, | Undisputed. | |

Page 8 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | | |
|---|---|---|---|
| | 2019). (Deposition of Krestina Coombs ("Coombs Dep.") at 13:13-19; 14:18-25; 24:6-9; 31:17-25, 65:13-25) (The cited portions of the Coombs Dep. are attached as Exhibit 4.) | | |
| 30 | As ASM, Coombs' was responsible for the "Center Store" and managing the center-store employees, including giving directions and instructions, planning work, checking on work, training, reporting on employees, and making recommendations as to hiring and firing. (*Id.* at 47:23-53:22.) Additionally, during the times that Coombs was the senior manager onsite (typically 2-3 hours per day, and 1-2 days per week), she was in charge of the entire store and all of its employees. (*Id.* 64:18-65:2; Ridley Decl., ¶ 4.) Moreover, during the last two months of her second stint as ASM, her Store Director was absent for "probably at least 90 percent of the time" so she was the senior manager on site—during which time she was "basically managing the store," including directing employees, taking care of problems that popped up, resolving employee complaints, and reporting employee disciplinary matters to upper management (which resulted in termination of at least one employee). (Coombs Dep. at 43:13-47:7.) | Disputed. As ASM, Coombs primary duty was manual labor, Coombs did not train other employees, did not evaluate, discipline, hire or fire other employees. Deposition of Krestina Coombs ("Coombs Dep.") at 32:6-33:10; 49:14-50:17; 53:12-16). | |
| 31 | Her additional duties and responsibilities as ASM as included: Ordering product; checking emails for customer complaints; ensuring employee time entries were correct; giving direction to center store employees; walking the store to ensure things were getting done; giving instructions to employees; planning work for center store employees; training employees; giving input on employee evaluations; reporting employees for disciplinary action; and interviewing at least one job applicant who was eventually hired (checker). (*Id.* at 32:2-25; 47:8-51:20.) | Disputed. As ASM, Coombs did not train other employees, did not evaluate, discipline, hire or fire other employees. (Coombs Dep. at; 32:6-33:10; 46:1-9; 48:18-49:3; 49:14-50:17; 53:12-16). | |
| 32 | Coombs had responsibility for employee | Undisputed. | |

Page 9 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | safety, including regular store inspections and directing employees as to clean up tasks. (*Id.*, 58:5-59:12.) | | |
| 33 | Coombs assisted with store security, counting money onsite, opening the store, and responding to shoplifting incidents. (*Id.*, 42:3-43:12.) | Undisputed. | |
| 34 | Coombs participated in periodic strategic discussions with upper management about how to grow the store. (*Id.*, 61:10-22.) | Disputed. Coombs was not involved in strategic planning (*Id.* at 61:7-9). | |
| 35 | Coombs responsibilities included ordering store inventory, and she had significant discretion as to what products to order, and the amounts, particularly around the holidays, admitting that if she ordered too much or too little of something, that "fell on her shoulders." (*Id.*, 56:4-57:14.) | Undisputed. | |
| 36 | Coombs admitted that the only thing a store director did that she did not do as an assistant manager was "most of the interviewing," and that as an ASM she did essentially the same things as a store director. (*Id.*, 67:5-21.) | Disputed. Coombs was a Store Director for approximately three months and did not know what all the responsibilities of Store Director were. (*Id.* at 65:13-67:13). | |
| 37 | Coombs last day was March 23, 2019, as Store Director. (*Id.,* 65:13-25.) | Undisputed. | |
| 38 | David Davis ("**Davis**") was first employed by Ridley's in February 2012 as a deli clerk in the Hyrum, Utah, and served in various positions thereafter until he was promoted to Assistant Manager in September, 2014, where he worked until his resignation in January of 2016. (Deposition of David Davis ("Davis Dep.") at 9:3-7, 20:16-21:3, 68:7-12 (the cited portions of the Davis Dep. are attached as Exhibit 5).) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 39 | Davis was the senior manager on site for the entire store and its employees for several hours a week, and at least one full day a week—approximately one-third of his total worktime. Moreover, for several weeks towards the end of his tenure, the store director was out helping set up a | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, | |

Page 10 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | new store, and during that entire time Davis supervising all store operations and employees on a fulltime basis. (*Id.* at 23:20-26:7; 41:20-24; 66:2-67:4.) | based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
|---|---|---|---|
| 40 | Davis described his job as ASM as walking around the store taking care of problems, helping people, and just doing "whatever needs to be done." (*Id.* at 51:17-23.) This included responsibilities for customer service, "getting the load out," making sure carts were brought in, helping run the front desk area, monitoring cooler temperature logs, and generally looking for and addressing problems (*Id.* at 31:25-32:17; 33:22-34:12; 44:12-18; 65:1-66:1.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 41 | When he was not "walking around the store," he was in the managers' office, where he had specific responsibility for the following tasks: store bookkeeping using the store computer, balancing the tills either at closing or opening, two to three times a week, (*id.* at 29:24-31:23; 44:12-18; 59:18-25), accessing the safe, putting the tills in the safe, counting all the money to make sure it matched the books, recording the money in the program, and locking the safe (*id.* at 55:13-56:2); making bank deposits (*id.* at 56:3-8); and meeting with employees or applicants, or participating in manager conference calls. (*Id.* at 65:1-66:1.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 42 | With regard to employee supervision and management, his responsibilities included giving instruction to employees and the closing manager in the form of a "to do" task list that he compiled while walking the store, or otherwise assigning tasks to employees if something needed to be done (*id.* at 34:19-35:17); training employees on various tasks (*id.* at 39:7-11); sitting in on employee performance evaluations (*id.* at 40:3-17; 44:23-45:6); employee scheduling (*id.* at 35:18-36:9); helping employees with questions over | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |

Page 11 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | |
|---|---|---|
| | how to do their jobs (*id.* at 37:18-22); reporting employees for disciplinary action, which in at least one case resulted in an employee's termination (*id.* at 40:19-41:24); sitting in on interviews for new hires and providing feedback about candidates (*id.* at 43:11-15; 43:18-23); filling out and signing various company employee forms (*id.* at 45:12-47:14). Davis agreed that his recommendations and involvement in employee evaluations may have been considered for compensation decisions. (*Id.* at 44:5-8.) | | |
| 43 | He had responsibility over product ordering and merchandising, including building orders for store product (*id.* at 47:15-48:2; 71:12-18); helping prepare for the annual case lot sale and putting in the case lot order, and placing and organizing the product in the store (*id.* at 48:4-20; 74:16-76:5); and changing, moving around, and cleaning up "endcaps" and aisle displays (*id.* at 49:3-19). He also had responsibility over signage. (*Id.* at 50:8-13.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 44 | He also had responsibility over aspects of the physical facility, and employee and customer safety, including by checking freezers and refrigeration units "almost every hour" to make sure temperatures were proper and maintaining temperature logs, as well as doing safety checks throughout to make sure there were no hazards (*Id.* at 50:14-51:16; 53:6-12; 64:13-25.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 45 | He had responsibility over store security, and was one of three people who had store keys (*id.* at 54:24-55:10); he had responsibility for making sure doors were shut and locking the store (*id.* at 53:16-54:3; 54:21-23); he made sure that the firearms were locked up in the sporting goods department at night (*id.* at 54:7-20); and he responded to theft issues (*id.* at | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual | |

Page 12 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | | |
|---|---|---|---|
| | 57:4-58:1). | assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 46 | He resolved customer complaints and handled customer returns. (*Id.* at 58:2-17.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 47 | He also participated in monthly or biweekly conference calls with the store management. These calls happened monthly or biweekly on a regular basis and they were attended by store managers and department managers, and employees from corporate. After the meetings, Davis was responsible for communicating information to department managers if they had not been on the call. If the Store Director had not been on the call, Davis would discuss his notes with the Store Director afterwards. (*Id.* at 61:10-62:19.) He also accompanied upper management on walkarounds during popup visits to check store status. (*Id.* at 63:8-64:12.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 48 | Davis' last day of work at Ridley's was January 15, 2016. (*Id.* at 68:2-12.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Davis' claim, based on the statute of limitations, factual assertions regarding Plaintiff Davis' job duties are irrelevant. | |
| 49 | Brian Donovan ("**Donovan**") was hired as an ASM for Ridley's Wellington, Colorado | Undisputed. | |

Page 13 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | store in March of 2018 and worked for approximately one month until his termination on April 26, 2018. (Deposition of Brian Donovan ("Donovan Dep.") at 13:12-23; 42:21-25; 43:23-25 (the cited portions of the Donovan Dep. are attached as Exhibit 6).) | | |
| 50 | Donovan came to Ridley's with extensive retail grocery experience, having worked as ASM and store director for Albertson's and Sprouts, where his responsibilities included customer service, cash handling, schedule writing, inventory, safety, supervising employees and day-to-day operations of the store. (*Id.* at 11:21-12:15; 14:24-15:12.) He agreed that his duties for Ridley's were the same as any other ASM job he had had. (*Id.* at 18:19-24.) | Disputed. Donovan's primary duties were stocking shelves, working as a cashier, and working on displays. (Deposition of Brian Donovan ("Donovan Dep.") at 21:22-22:13; 24:20-25:2; Donovan Decl. at ¶ 7-31) | |
| 51 | Like other of Ridley's ASM's, Donovan had primary responsibility over the center-store and directly supervised the center-store employees—around eight employees total, and two to three there on any given day. (*Id.* at 22:17-23:1-6). Along with the center-store employees, he also supervised the dairy manager and frozen foods manager as well. (*Id.* at 24:3-12). | Disputed. Donovan's primary duties were stocking shelves, working as a cashier, and working on displays. (Donovan Dep. at 21:22-22:13; 24:20-25:2) | |
| 52 | Similarly, as ASM Donovan was in charge of the entire store and supervised all departments and employees in the absence of the Store Director, which was up to four hours a day, and one to two days a week. (*Id.* at 20:10-21:1; 24:13-16; 41:20-42:3.) | Disputed. Donovan was the senior manager at the time the Store Director was absent. However, major decisions had to wait for the Store Director. Donovan's primary duties were stocking shelves, working as a cashier, and working on displays. (*Id.* at 21:22-22:13; 24:20-25:2; Donovan Decl. at ¶ 7-31. | |
| 53 | Donovan's duties included coaching and giving feedback to employees, guiding and directing employees, answering questions, and responding to and resolving employee complaints, or escalating them as | Disputed. Donovan would only do so in the absence of Store Director, and it was mostly employees | |

Page 14 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | |
|---|---|---|
| | appropriate. (*Id.* at 25:5-26:15.) | simply asking for more help. (*Id.* at 25:14-26:20). | |
| 54 | He also planned the work for center-store employees, and checked in with the other department managers, as he had done at his previous jobs. He would check on the other departments throughout the day, but spent a significant amount of time in the grocery department because it was "kind of, a mess."  (*Id.* at 21:22-22:21; 26:10-27:7.) | Disputed. Donovan did not do the schedules and would check with other managers only when the Store Director was absent. (*Id.* at 26:21-27:20). | |
| 55 | And though he was there for only a short time, he understood his duties and responsibilities included training employees, providing feedback to the store director regarding employees under him, sitting in on or recommending discipline of employees, and input into employee hiring. (*Id.* at 27:17-30:20.) | Disputed. Donovan did not train other employees or provide feedback about other employees. He did not recommend discipline, hiring or firing of other employees (*Id.* at 27:17-20; 28:5-10; 28:16-30:10; Donovan Decl.") at ¶ 7-31. | |
| 56 |  As ASM, Donovan's duties included ordering dry inventory, filling out sales, purchases and cash forms, and merchandising, through building grocery and frozen end caps and displays, and lobby displays, using his past experience to do so. (*Id.* at 31:15-33:12.) | Undisputed. | |
| 57 | As ASM, Donovan's duties included walking around the store, making sure things and people were working, looking for problems, safety issues, spills, and other similar problems, and directing employees to resolve them, or to work in a safe manner. (*Id.*at 34:13-35:13.) | Undisputed. | |
| 58 | He had access to and responsibility for the store keys, and would open or close the store. When opening, he would put the tills out. When closing,  he would make sure necessary product was covered—such as produce. He would walk the grocery department and make sure all of the ad items were full, check the back doors, lock up the back doors, and make sure that | Undisputed. | |

Page 15 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | | |
|---|---|---|---|
| | frozen food was frozen and that there were no issues. He would then count out the tills and the safe and the lottery, and then locked up to leave. (*Id.* at 36:2-13.) | | |
| 59 | He also had access to the safe, and made bank deposits. (*Id.* at 36:14-37:4.) | Undisputed. | |
| 60 | Donovan's last day at Ridley's was April 26, 2018. (*Id.* at 43:23-25.) | Undisputed. | |
| 61 | Chris Gallegos ("**Gallegos**") worked as an assistant manager/third person for Harmons Groceries in Ogden, Utah starting in November 2013, prior to starting at Ridley's in September of 2015 when Ridley's took over the Harmon's store. (Deposition of Chris Gallegos ("Gallegos Dep.") at 8:20-9:10, 10:23-25, 11:1-25 (the cited portions of the Gallegos Dep. are attached as Exhibit 7).) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 62 | He described his job at Harmons as "Helping run the entire store in a timely and efficient manner, completing all of grocery duties, such as freight, order, dates and face, help in all other departments as needed, responsible for opening/closing the store." (*Id.* at 9:11-9:20.) He agreed that his job at Ridley's as Grocery Manager was largely the same as his job at Harmon's. (*Id.* at 13:23-14:3; 15:14-21.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 63 | In his position as grocery manager at Ridley's, Gallegos supervised stock clerks who helped him with duties and responsibilities for groceries, and he was able to delegate tasks as needed. As grocery manager, Gallegos understood that the center store employees – groceries, frozen foods, dairy – all reported to the assistant manager. (*Id.* at 15:22-16:18; 18:14-19:1.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 64 | Gallegos was promoted to ASM on May 25, 2016. Gallegos stated that as ASM he | Plaintiffs object to this Statement because it | |

Page 16 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

|  | was responsible for total store procedures, overseeing everyday production and making sure everything was getting done and handled in a good manner, and "helping every department push forward and get through the day…." (*Id.* at 30:22-31:12.) | contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. |  |
|---|---|---|---|
| 65 | As ASM, he supervised the center store employees on any given shift which could be more than 25 employees at once. (*Id.* at 31:13-32:20.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. |  |
| 66 | His duties included assigning tasks or directing employees as he received direction or plans from the store manager. (*Id.* at 33:4-33:22.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. |  |
| 67 | His duties included employee scheduling, helping employees if they were struggling with their workload, handling simple employee complaints, employee training, and giving feedback to employees on a daily basis. (*Id.* at 33:23-36:9.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. |  |

**Page 17 of 35**
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| 68 | He was also trained on calculating "labor rates," meaning determining, based on sales, how many hours of labor could be scheduled for each department, and occasionally filled in for the store director on this task. (*Id.* at 54:18-55:24.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
|---|---|---|---|
| 69 | He sat in on employee evaluations performed by the store manager and gave feedback as necessary or requested. He also participated in employee disciplinary meetings performed by the store manager. (*Id.* at 36:15-37:22.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 70 | As an ASM, Gallegos participated in employee terminations performed by the store manager. (*Id.* at 39:14-20.)  He also participated in new hire interviews, and at times he performed these interviews on his own, giving his notes and recommendations to the store director. (*Id.* at 40:7-41:20.)  As an ASM his responsibilities included giving input on employee promotions for the store director to consider. (*Id.* at 43:7-14.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 71 | As an ASM, he would sign company forms—mostly dealing with employee evaluations—when needed. (*Id.* at 44:7-18.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding | |

**Page 18 of 35**
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | Plaintiff Gallegos' job duties are irrelevant. | |
|---|---|---|---|
| 72 | Along with his full-time supervisory responsibilities over the center-store operations and employees, Gallegos was also the senior manager on site when the Store Director was not there, which was 2-3 hours per day, and one-two days per week, and during which time he was in charge of the entire store and all employees. (*Id.* at 38:9-39:4.) He estimated that this sole-manager time was up to 30 percent of his work time. (*Id.* at 60:6-14.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 73 | As an ASM, he was responsible for ordering store inventory. He would do "big pallet large orders" at the request of the store director, but could do "small pallet orders" at his own discretion, and did not have a dollar limit on what he could order. (*Id.* at 44:19-46:11.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 74 | He was responsible for merchandising, stating that he could direct the grocery manager to build displays for special events, or set up ads or posters. (*Id.* at 46:24-47:24.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 75 | As an ASM, he had responsibility to ensure "safety books" were posted in different corners and sweep and safety logs were being filled out hourly by each department. He stated that as assistant manager, apart from his office responsibilities, he would be "out in the store, walking around… checking logs, | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of | |

Page 19 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | making sure work is getting done… answering questions, assisting customers… just basically ensuring that the store is operating and functioning in a good [manner]."(*Id.* at 47:25-49:4) | limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 76 | His responsibilities included overseeing the physical facilities and equipment, calling in service a "couple times" for a broken forklift or the HVAC system. (*Id.* at 49:14-50:6.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 77 | As ASM, his responsibilities included opening and closing the store, which required him to have keys to the building and the combination to the safe. Only the two store assistants and the store director had keys. (*Id.* at 50:7-51:10.) When closing, he was responsible for counting the tills, counting the total money, setting additional cash aside for a bank deposit, and ensuring the money made it into the safe. (*Id.* at 51:4-52:5.) He would also occasionally make the bank deposits. (*Id.* at 52:6-21.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 78 | His responsibilities included handling shoplifting incidents and he would call the police maybe two or three times a month. (*Id.* at 52:22-53:21.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 79 | He was responsible for filling out accident reports, enforcing store policies, and he regularly participated in store meetings. (*Id.* at 54:8-13; 55:25-56:3; 56:15-58:7.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. | |

Page 20 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
|---|---|---|---|
| 80 | For a period of several weeks prior to Gallegos leaving employment with Ridley's in March 2017, there was no store director over him. During that time he was acting as a store director on a full-time basis, participating in conference calls with corporate, and addressing all employee issues and scheduling. (*Id.* at 58:8-59:13.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 81 | Gallegos' last day of work at Ridley's was March 13, 2017. (*Id.* 24:2-15.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Gallegos' claim, based on the statute of limitations, factual assertions regarding Plaintiff Gallegos' job duties are irrelevant. | |
| 82 | Destiny Glanz ("**Glanz**") was hired as a deli manager for Ridley's Sheridan, Wyoming store in of March of 2015, and became an Assistant Manager approximately a year later.   (Deposition of Destiny Glanz ("Glanz Dep.") at 10:7-10, 14:7-15; 28:19-21.) (The cited portions of the Glanz Dep. are attached as Exhibit 8.) | Undisputed. | |
| 83 | As an ASM, Glanz was expected to be out in the store, walking around, looking for problems and issues that needed to be solved, employees that were not working, or unsafe conditions. (*Id.* at 44:10-16.) | Undisputed. | |
| 84 | As ASM, Glanz had supervisory authority | Disputed. Glanz did not | |

Page 21 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | |
|---|---|---|
| | over the grocery manager, who was over the "center-store." Additionally, when the store director was not there, which was 2-3 hours each day, plus the store director's days off or vacation days (one to two days a week), Glanz was the senior manager on site and supervised all employees (10-15 on any given day), directing their work, telling them what to do and where to do it. (*Id.* at 30:14-33:9.) During this time, Glanz would be handling the store and any employee issues that come up. (*Id.* at 41:12-42:4.) Nevertheless, Glanz acknowledged that even when the store director was there, she had the authority to direct employees' work. (*Id.* 32:11-21.) | direct other employees' work when the Store Director was present. (Deposition of Destiny Glanz ("Glanz Dep.") at 31:5-7; 31:23-33:6). | |
| 85 | Glanz' responsibilities included instructing employees, addressing employee complaints, doing employee coaching, responding to disciplinary matters, making recommendations to the store manager as to employee discipline, making recommendations regarding hiring, and occasionally sitting in on new hire interviews (*Id.* at 33:22-37:6.) | Disputed. Glanz' would only occasionally address complaints, do coaching or be involved in employee discipline. It was ultimately the Store Director's job. (*Id.* at 34:3-36:20). | |
| 86 | When Glanz was not walking the store, her responsibilities included "computer paperwork." (*Id.*, at 25:12-22.) She described this responsibility as "book work," which entailed counting the safe and verifying the money every morning, going through a stack of paperwork to enter every day's daily sales for each department and making sure that the day balanced out. (*Id.* at 40:3-13; 41:2-16.) Glanz had the combination to the store safe, which held all of the store's money, the extra key to the pharmacy, and any lost-and-found wallets, purses or credit cards. (*Id.* at 46:22-47:21.) She also was responsible for making bank deposits. (*Id.* at 47:22-48:1.) | Disputed. Glanz was responsible for this work only when the Store Director was not present. (*Id.* at 41:2-8). | |
| 87 | As ASM, Glanz also had responsibility for, and decision making authority over, merchandizing displays in the store. (*Id.*, 42:5-19.) This also included being involved | Disputed. Displays were already set and no discretion was needed. (*Id.* at 42:5-22.) | |

Page 22 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | in planning as to where to place product. (*Id.* at 51:23-52:5.) She also had responsibility over purchasing product for the store, and had decision making authority about how much product to purchase, making sure not to order too much. (*Id.* at 42:23-43:25.) | | |
| 88 | Her responsibilities as an ASM also included employee and customer safety. She filled out hourly floor sweep logs, as well as any incident reports for customer or employee injuries. As an ASM, it fell on her to enforce Ridley's policies. (*Id.* at 44:5-46:18; 51:6-16.) | Undisputed. | |
| 89 | When asked to put a percentage on her work time doing purely management-type duties, such as directing employees, ordering, helping employees, book work, etc., she stated 25%. However, she also admitted that during the remaining 75% she did not "turn off" her management responsibilities, and that employees would regularly come to her and she would respond, and help as needed to keep the store functioning. (*Id.* at 54:23-56:3.) | Disputed. Glanz stated most her work was cashiering and stocking shelves. Purely management-type duties were "maybe 25 percent." (*Id.* at 54:23-55:6). | |
| 90 | Cameron Harris ("**Harris**") held various positions with Ridley's starting as hardware clerk in Pinedale, Wyoming, becoming ASM in 2015, and working his way up to Store Director of Ridley's Pinedale store, which title he held throughout 2017 and 2018, and during which time he managed 30-40 employees at any given time. (Deposition of Cameron Harris ("Harris Dep.") at 41:20-42:9.) At his request, Harris was transferred to Ridley's Highland, Utah store in August, 2018, as an ASM, where he remained until his resignation in November, 2018. (*Id.* at 24:23-25.) (The cited portions of the Harris Dep. are attached as Exhibit 9.) | Undisputed. | |
| 91 | As ASM, Harris had directly supervisory authority over the grocery department and its employees, directing their work, giving them instructions, and telling them what to do. (*Id.*, 65:4-20, 70:10-71:19; 73:17-74:6; | Disputed. Harris was the senior manage on site only occasionally and the major decisions had to wait for the Store | |

Page 23 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | |
|---|---|---|
| | 89:9-14.) Additionally, there were times that Harris was the senior manager on site (typically two-three hours per day, and one-two days per week), during which time he was in charge of the entire store and all of its employees. (*Id.* at 42:10-14; Ridley Decl., ¶ 4.) | Director. (Deposition of Cameron Harris ("Harris Dep."; Harris Decl. at ¶ 25). |
| 92 | He admitted that as ASM he had the same authority as the store director with the exception of having to get approval for hiring and firing, directing department heads, and employee discipline (though he could send someone home). (Harris Dep., 71:20-72:23.) | Disputed. There were other duties of Store Director that Harris did not do, including without limitation, scheduling, evaluations, etc. (Harris Dep. at 46:15-23; 59:23-60:21; 75:25-76:2). |
| 93 | He could resolve employee complaints, and he trained grocery employees. (*Id.*, 73:17-74:23.) His responsibilities also included providing input regarding employee evaluations, making recommendations regarding raises or otherwise been involved in discussions regarding employee compensation, and participating in applicant interviews; his responsibilities also may have included making recommendations for termination. (*Id.*, 75:13-77:25.) | Disputed. Harris did not have the authority to resolve all complaints. Many complaints had to be resolved by the Store Director. (*Id.* at 73:5-12; 101:14-16). Store Director did employee evaluations, compensation and hiring and firing of employees (*Id.* at 75:13-77:1; Harris Decl. at ¶ 12-32). |
| 94 | As ASM he had authority to implement employee accommodations. (*Id.*, 105:18-106:7.) | Disputed. Harris would implement accommodation under the direction of Store Director (Harris Dep. at 105:9-17). |
| 95 | Harris' ASM responsibilities included ordering groceries for the store, being responsible for the money at closing time, counting the safe, and otherwise helping out around the store as needed. (*Id.*, 45:11-25; 78:12-80:17.) | Undisputed. |
| 96 | Harris also had a set of keys for the Pinedale store. (*Id.* at 64:10-12.) | Undisputed. |
| 97 | An ASM, Harris was also responsible for merchandising, setting up displays, and setting up departments. (*Id.*, 78:4-11.) | Undisputed. |

Page 24 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| 98 | Harris had responsibilities over employee safety, and had the authority and responsibility to correct unsafe behaviors or situations without input from the store director. (*Id*., 80:18-81:13.) | Disputed. Harris did not have the authority to discipline or fire other employees. (*Id*. at 75:13-77:1; 81:19-22; Harris Decl. at ¶ 12-32.) | |
|-----|-----|-----|-----|
| 99 | As ASM, Harris attended weekly department head meetings. (*Id*. at 83:17-21.) | Undisputed. | |
| 100 | He represented Ridley's at two or three trade shows per year. (*Id*. at 90:22-92:19; 95:16-19.) | Undisputed. | |
| 101 | Harris's last day of work at Ridley's was in November, 2018 (Compl. ¶ 34.) | Undisputed. | |
| 102 | Julie Anne Neil ("**Neil**") started at Ridley's in Casper, Wyoming as an assistant manager on March 17th of 2015 after Ridley's acquired the Casper Safeway in approximately December of 2014. (Deposition of Julie Ann Neil ("Neil Dep.") at 16:6-18:23.) She became ASM at Ridley's Eagle Mountain, Utah location on May 3, 2015, (*Id*. at 21:10-25; 23:1-3); moved to Ridley's North Orem location on August 10, 2015, (*id*. at 23:17-24:3); and then became ASM at Ridley's "Lolo's" in Provo on October 20, 2015 (*id*. at 24:20-25.) (The cited portions of the Neil Dep. are attached as Exhibit 10.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |
| 103 | Like her ASM cohorts, as an ASM Neil had responsibilities for the center-store operations and employees. While she initially denied direct supervisory authority over the employees, she admitted under oath that the center store employees would come to her first with any problems, and later admitted that her duties and responsibilities included giving center store employees direction and coaching when needed. (*Id*. at 40:22-43:1.) She also admitted that when the store director was not present, which was one-two days per week, and around two hours per day—25-30% of her total work time—she was the senior manager at the store, in charge of running the store and directly supervising | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |

Page 25 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | | |
|---|---|---|---|
| | its 25-30 employees. (*Id.* at 34:4-35:20; 40:1-7.) | | |
| 104 | Neil's responsibilities as ASM included walking around the store looking for problems, making sure employees were working, and making sure there were no spills or other hazards. She estimated that 50-60% of her day was spent walking the store and ensuring all departments were running smoothly and that there wasn't anything to be cleaned or restocked. (*Id.* at 37:14-38:22). | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |
| 105 | As ASM, Neil was frequently the liaison between the store director and the employees. (*Id.* at 38:23-39:18) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |
| 106 | As an ASM, she had the authority to report and/or escalate employee disciplinary matters to a department manager. (*Id.* at 44:9-22) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |
| 107 | As an ASM, she also had responsibility for product ordering, which she did two or three times a week. (*Id.* at 48:8-15; 50:2-6.) She agreed that ordering was generally "straightforward," but occasionally she had to make a decision on how much of something to order. (*Id.* 50:2-51:9.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of | |

Page 26 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | | limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |
| 108 | She had responsibility for merchandising, including setting up product displays, which required her to "get creative" with how she displayed a product. (*Id.* at 46:10-47:14.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |
| 109 | She also had responsibility for employee and customer safety as she walked around looking for unsafe conditions, either solving the problem herself or directing another employee to do so. (*Id.* at 52:12-53:7.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |
| 110 | She did temperature checks as she walked around the store. (*Id.* at 54:2-7.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. | |
| 111 | As an ASM, her responsibilities included opening the store and entering sales figures from the night before in the computer. (*Id.* at 28:23-29:17) Neil used the company computer to enter the sales reports, print off paperwork, look up sales, | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of | |

Page 27 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | |
|---|---|---|
| | and occasionally to type up work schedules. (*Id.* at 34:9-35:20; 36:2-37:3; 46:2-6.) She also did minor bookkeeping. (*Id.* at 56:13-57:14). | Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. |
| 112 | When she opened the store, she would count the safe down, get the "Coinstar" receipts so she could add those to a report, printed off "the stuff that the departments needed to know," then she would distribute that information to the departments, and ask how they were doing, and "just kind of make sure everything was good." (*Id.* at 60:7-61:8.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. |
| 113 | She had responsibilities to close the store. She had keys to the store, and the safe combination, and when closing, she would secure the tills in the safe, and would walk around the store making sure everything was secure and all of the doors shut and locked. (*Id.* at 54:11-57:4.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. |
| 114 | Neil did not work for Ridley's beyond June, 2016. (Compl., ¶ 35.) | Plaintiffs object to this Statement because it contains irrelevant factual assertions. Because Plaintiffs concede the dismissal of Plaintiff Neil's claim, based on the statute of limitations, factual assertions regarding Plaintiff Neil's job duties are irrelevant. |
| 115 | Andrez Rios ("**Rios**") was hired by Ridley's as an ASM in May, 2019, working at Ridley's store in Wellington, Colorado for approximately three months until he | Undisputed. |

Page 28 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | resigned in August, 2019. (Deposition of Andrez Rios ("Rios Dep."), Ex. 1; 11:20-23; 12:8-16; Ex. 2; 53:10-20.)  Rios had significant retail grocery experience, having worked as an assistant manager for Walmart and Safeway. (*Id.* at 12:25-13:15; 15:2-8;15:12-15). (The cited portions of the Rios Dep. are attached as Exhibit 11.) | | |
| 116 | Like his co-ASMs, Rios had primary responsibility over the center-store operations and employees, though in Rios' case those were divided into two—perishable and non-perishable—with Rios overseeing perishable (dairy and frozen foods) and overseeing two employees, consisting of the Dairy manager and one employee under the Dairy manager. (*Id.* at 26:11-27:25.) Outside of his primary responsibilities over perishable foods, and like his co-ASMs, Rios was also the senior manager on site approximately 30% of the time in the absence of the Store Director, and during that time Rios was over the entire store. During that time he would walk the store, making sure the store was functioning and the employees were working, and looked for and resolved problems. (*Id. at* 28:12-29:1, 51:8-25.) During that time he handled whatever came up, addressed the needs of the employees, and ran the store. (*Id.* at 21:13-22:6.) | Disputed. Rios did not oversee the Dairy Manager (Deposition of Andrez Rios ("Rios Dep.") at 27:7-22). Rios was the senior manager on site approximately 10% of the time, "if hardly ever." (*Id.* at 44:3-45:10). Rios did not have the authority to do scheduling, handle employee complaints, train, hire, discipline or fire other employees (*Id.* at 28:7-11; 29:2-4; 29:23-30:8; 32:8-24). Rios' main duty was to stock shelves. (*Id.* at 43:10-44:2; Rios Decl. at ¶ 7-32.) | |
| 117 | As ASM, his duties and responsibilities included handling employee complaints, and providing feedback to employees if they were doing something wrong or needed encouragement. (*Id.* 29:2-22.) He believes he may have also informally participated in the employee evaluation process, and provided feedback about employees, which he acknowledged would have also gone into decisions about employee pay (*Id.* 30:9-18; 31:5-32:7; 33:15-22) | Disputed. Rios did not have the authority to do scheduling, handle employee complaints, train, hire, discipline or fire other employees (*Id.* at 28:7-11; 29:2-4; 29:23-30:8; 32:8-24); Rios' main duty was to stock shelves. (*Id.* at 43:10-44:2; Rios Decl. ¶ 7-32.) | |
| 118 | As ASM, Rios' duties also included office | Disputed. Rios' main | |

Page 29 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | |
|---|---|---|
| | work, including end of day cash reconciliation, counting the cash drawers and putting them in the safe at the end of the day, preparing the bank deposit, and setting up the cash drawers for the next day. (*Id.* 20:1-7; 24:14-26:10.) He also filled out order forms and "probably other paperwork." (*Id.* 35:1-22.) | duty was to stock shelves. (Rios Dep. at 43:10-44:2; Rios Decl. ¶ 7-32). |
| 119 | As ASM, Rios' duties and responsibilities included ordering and filling the freezer, ordering and filling the dairy, and ordering and filling the dry or non-perishable items. (*Id.* at 24:14-25:5.) Rios used discretion in ordering, and had decision making authority over how much to order, including whether to order extra product for special events or for a holiday. (*Id.* at 36:11-37:5.) He also had input into store financials, with responsibility to make sure that he did not exceed the grocery budgets when ordering product. (*Id.* at 39:18-24.) | Disputed. Rios did not have input into store financials. when ordering products. (*Id.* at 39:18-40:4). |
| 120 | He had responsibility for merchandising, with discretion to set up displays or signage, deciding where it would be displayed, or if they needed a special display for something. He testified that he "definitely had the reins on that." (*Id.* at 35:23-37:5.) | Undisputed. |
| 121 | He had responsibility for employee and customer safety and store security. As he walked the store, he looked for and resolved safety issues, including wet-spills and other slip-and-fall hazards, overstuffed product on shelves, and other similar problems, with the authority to direct other employees to remedy the situation. (*Id.* at 37:6-38:7.) He also had responsibility for closing and locking the store. In that regard, he would walk the floor, check the bathrooms and each corner of the store, do the reconciliation, arm the security system, and lock the doors behind him. (*Id.* at 38:15-39:8.) | Undisputed. |
| 122 | He also personally held weekly meetings with department managers, in which he discussed merchandizing, and other | Undisputed. |

Page 30 of 35
Stanton Meats, et al. v. Ridley's Family Markets, Inc.
U.S.D.C. (Col.) No. 1:22-cv-1070
Plaintiffs' Response to Defendant's Statement of Facts

| | | | |
|---|---|---|---|
| | product issues. (*Id.* at 41:24-42:16.) | | |
| 123 | Rios' last day of work at Ridley's was August 9, 2019. (*Id.* 53:6-15.) | Undisputed. | |
| 124 | Jared Whitaker ("**Whitaker**") started working for Ridley's as a stocker at its Lolo's store in Provo, beginning in 2013, and ending in 2014. (Deposition of Jared Whitaker ("Whitaker Dep.") 8:23-9:5, 12:13-24, 17:1-6, 18:2-4.) He was rehired as a Closing Manager in August, 2016 at Ridley's Orem, Utah store, an hourly position. (*Id.* at 18:5-19-7.)  In January 2017, Jared Whitaker was promoted to ASM of Ridley's Highland, Utah store, where he worked until he took an hourly position as a clerk on September 2, 2018. (*Id.* at 15:16-23; 19:17-19; 20:17-21:15; 24:6-8; 72:3-20.) (The cited portions of the Whitaker Dep. are attached as Ex. 12.) | Undisputed. | |
| 125 | As an ASM Whitaker had responsibilities for the center-store operations and employees, which in his case also including the deli, produce and bakery, being responsible for the smooth functioning of these departments. (*Id.* at 42:20-43:25) | Disputed. Whitaker's responsibilities were mainly filling in on the cashier registers, stocking the shelves, ordering the groceries, work in the deli, clean bathrooms. (Deposition of Jared Whitaker ("Whitaker Dep.") at 23:15-23; 57:4-6; 62:10-22; Whitaker Decl. ¶ 7-32. His responsibilities did not include scheduling, hiring firing, discipline other employees, directing other employees, handling formal employee complaints, evaluations, discipline, pay, budget, coaching or employee safety (Whitaker Dep. at 26:19-21; 34:15-35:6; 37:16-38:11; 40:15-42:2; 46:13-18; 47:6-48:7; | |

Page 31 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | | |
|---|---|---|---|
| | | 50:21-53:4; 53:5-7; 53:8-19; 57:9-16; 58:5-11; Whitaker Decl. ¶ 7-32). | |
| 126 | Along with his responsibilities over the center store, deli, produce, and bakery, Whitaker was the senior manager on site in charge of the entire store and its employees when the Store director was not there. This included the store director's one day off a week, plus an hour or two each day. (Whitaker Depo at 29:4-31:3, 62:23-64:9.) | Disputed. He was not the senior manager on site very often. (30:19-25). When he was, Whitaker's responsibilities were mainly filling in on the cashier registers, stocking the shelves, ordering the groceries, work in the deli, clean bathrooms. (23:15-23; 57:4-6; 62:10-22) He responsibilities did not include scheduling, hiring firing, discipline other employees, directing other employees, handling formal employee complaints, evaluations, discipline, pay, budget, coaching or employee safety (26:19-21; 34:15-35:6; 37:16-38:11; 40:15-42:2; 46:13-18; 47:6-48:7; 50:21-53:4; 53:5-7; 53:8-19; 57:9-16; 58:5-11). | |
| 127 | As an ASM, Whitaker was able to direct and give instructions to employees. He also trained and coached employees, and provided feedback to employees. (*Id.* at 44:1-22; 48:19-49:9.)  He also resolved employee complaints, or escalated complaints to the store director if it were something he could not resolve. (*Id.* at 47:6-48:7.) | Disputed. Disputed. Whitaker's responsibilities were mainly filling in on the cashier registers, stocking the shelves, ordering the groceries, work in the deli, clean bathrooms. (23:15-23; 57:4-6; 62:10-22) He responsibilities did not include scheduling, hiring firing, discipline other employees, | |

**Page 32 of 35**
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | directing other employees, handling formal employee complaints, evaluations, discipline, pay, budget, coaching or employee safety (26:19-21; 34:15-35:6; 37:16-38:11; 40:15-42:2; 46:13-18; 47:6-48:7; 50:21-53:4; 53:5-7; 53:8-19; 57:9-16; 58:5-11). | |
|---|---|---|---|
| 128 | Whitaker had responsibility for employee and customer safety, with the authority to direct employees to respond to unsafe conditions. (*Id.* at 58:12-21.) | Disputed. Whitaker's responsibilities were mainly filling in on the cashier registers, stocking the shelves, ordering the groceries, work in the deli, clean bathrooms. (23:15-23; 57:4-6; 62:10-22) He responsibilities did not include scheduling, hiring firing, discipline other employees, directing other employees, handling formal employee complaints, evaluations, discipline, pay, budget, coaching or employee safety (26:19-21; 34:15-35:6; 37:16-38:11; 40:15-42:2; 46:13-18; 47:6-48:7; 50:21-53:4; 53:5-7; 53:8-19; 57:9-16; 58:5-11). | |
| 129 | He helped to make sure the store ran smoothly. (*Id.* at 62:10-63:2) | Undisputed. | |
| 130 | As an ASM, Whitaker participated in new hire interviews, and provided feedback on interviewees, and at least one of his recommendations was hired. (*Id.* at 34:15-35:16; 51:12-21). He participated in the employee evaluation process, providing feedback on employees he had knowledge | Disputed. Whitaker's responsibilities were mainly filling in on the cashier registers, stocking the shelves, ordering the groceries, work in the deli, clean | |

**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| | | |
|---|---|---|
| | of. (*Id.,* 49:10-50:20.) He was occasionally asked to offer his opinion regarding employee promotions. (*Id.* at 53:20-54:3.) He also recalled participating in at least one employee disciplinary meeting. (*Id.* 50:24-51:7.) | bathrooms. (23:15-23; 57:4-6; 62:10-22) He responsibilities did not include scheduling, hiring firing, discipline other employees, directing other employees, handling formal employee complaints, evaluations, discipline, pay, budget, coaching or employee safety (26:19-21; 34:15-35:6; 37:16-38:11; 40:15-42:2; 46:13-18; 47:6-48:7; 50:21-53:4; 53:5-7; 53:8-19; 57:9-16; 58:5-11). |
| 131 | As an ASM, Whitaker had responsibility over ordering store inventory. To do that, he would access the upcoming ads on the computer to see what was going on sale, as that would affect how much he would need to order specifically for the event. This was frequently in conjunction with a holiday, where he would need to anticipate additional product needs, and order sufficient amounts. He would also consider whether to determine whether to add or subtract product from an order. (*Id.* at 33:3-34:11.) | Undisputed. |
| 132 | He also had responsibility over the physical facility. He had store keys and would unlock the store if he were the first to arrive. If he were closing, he would lock the store at night. (*Id.* at 59:4-20.) Whitaker called police about shoplifters "a couple times." (*Id.* at 59:23-60:8.) | Undisputed. |
| 133 | He was responsible for making bank deposits on a regular basis. (*Id.* at 54:14-23.) | Undisputed. |
| 134 | Whitaker occasionally sat in on conference calls with assistant managers and grocery managers in preparation for big holiday events. (*Id.* at 61:22-62:9.) | Undisputed. |

Page 34 of 35
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**

| 135 | Whitaker's last day of work at Ridley's as an ASM was September 2, 2018, and he left Ridley's entirely in October, 2018. (*Id.* at 72:3-73:10.) | Undisputed. | |

Respectfully submitted,

**STANTON MEATS, KRESTINA COOMBS, DAVID DAVIS, BRIAN DONOVAN, CHRIS GALLEGOS, DESTINY GLANTZ, CAMERON HARRIS, JULIE ANNE NEIL, ANDREZ RIOS, JARED WHITAKER and WILLIAM WULF, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Col. Bar No. 44358
josh@sanfordlawfirm.com

**Page 35 of 35**
**Stanton Meats, et al. v. Ridley's Family Markets, Inc.**
**U.S.D.C. (Col.) No. 1:22-cv-1070**
**Plaintiffs' Response to Defendant's Statement of Facts**