**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.** 1:22-cv-1070-PAB

STANTON MEATS, JASON CARILLO, KRESTINA
COOMBS, DAVID DAVIS, BRIAN DONOVAN,
CHRIS GALLEGOS, DESTINY GLANTZ,
CAMERON HARRIS, JULIE ANNE NEIL, ANDREZ
RIOS, JARED WHITAKER, AND WILLIAM WULF,

     Plaintiffs,

v.

RIDLEY'S FAMILY MARKETS, INC.,

     Defendants.

---

**DEFENDANT RIDLEY'S FAMILY MARKETS, INC.'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

The Court should grant Ridley's Family Markets, Inc. ("Ridley's") Motion for Summary Judgment ("Motion"). In Plaintiff's Response to Motion for Summary Judgment (ECF No. 44), Plaintiffs concede that the claims of Plaintiffs Davis, Gallegos, Neil, and Wulf are time barred and thus should be dismissed. Plaintiffs' efforts to controvert Ridley's factual statements fail also, and Ridley's is entitled to summary judgment on all remaining claims.

## I.    RESPONSE CONCERNING DISPUTED FACTS

In their factual disputes, Plaintiffs either ignore the language of the fact, make unsupported claims, or they manufacture a dispute via form declarations that are directly and impermissibly contrary to prior deposition testimony. The Rules do not permit this. *E.g., Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986) ("the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely

by submitting an affidavit contradicting his own prior testimony.") Ridley's responds to each dispute, retaining the original numbering of the factual statement as presented in its opening brief:

2.      Plaintiffs' dispute of Fact 2, which was intended to be a broad summary of the evidence for each individual plaintiff, misses the language of the fact. Ridley's never claimed that the ASM alone manages all aspects of the store. Fact 2 shows Plaintiffs had such responsibilities *along with* the store director. The remaining portion of Plaintiffs' dispute consists of denying many aspects of the ASM's job, and claiming others as their "primary duty." Plaintiffs rely solely on the identically worded post-deposition declarations of Meats, Donovan, Harris, Rios, and Whitaker, which in many cases are contrary to prior deposition testimony and thus should be struck. The evidentiary record shows sworn testimony contrary to these brand new, factory-created assertions, including testimony of all the Plaintiffs admitting to various responsibilities, including scheduling, evaluating, disciplining, and being involved at some level with hiring, firing, and pay, including all of the facts disputed by Plaintiffs and addressed individually below. Ridley's here incorporates its responses the disputed facts below starting with Fact 16 through Fact 130, which shows the undisputed evidence supporting summary judgment against each individual plaintiff.

3.      Plaintiffs' broad and non-specific dispute of Fact 3 also misses the language of the fact, which sets forth the still-undisputed fact that Plaintiffs each were the senior manager at their store when the Store Director was absent—approximately 30% of the ASM's worktime, and that even when the Store Director was present, the ASM was nevertheless over the center-store operations and employees. Ridley's incorporates its response to Plaintiff's dispute of Fact 2, above.

4.      Plaintiffs' broad and non-specific dispute of Fact 4 consists of denying many aspects of the ASM's job, and claiming others as their "primary duty." Plaintiffs again rely solely

on the identical post-deposition declarations that contradict prior deposition testimony. The evidentiary record shows sworn testimony contrary to these assertions, including testimony of all the Plaintiffs admitting to various responsibilities with employees including scheduling, evaluating, disciplining, and being involved at some level with hiring, firing, and pay, including all of the facts disputed by Plaintiffs and addressed individually below, which Ridley's here incorporates.

5.     Plaintiffs' dispute of Fact 5 similarly misses the language of the fact, which summarizes the evidence of various administrative tasks of Plaintiffs—most of which Plaintiffs did not dispute. Instead, Plaintiffs claim that "ASM had only limited personal management responsibilities," citing to the inadmissible post-deposition declarations. To the extent the declarations are contrary to prior sworn deposition testimony, they are inadmissible. The evidentiary record shows sworn testimony contrary to these assertions, including testimony of all the Plaintiffs admitting to various employee responsibilities which Ridley's here incorporates.

6.     Plaintiffs' "dispute" of Fact 6 ignores the language of the fact. Plaintiffs' "dispute" is a list of manual tasks which they claim were their "primary duty," relying again on identical declarations largely contrary to prior deposition testimony. The statement ignores the still-undisputed fact that Plaintiffs each were the senior manager at their store when the Store Director was absent—approximately 30% of the ASM's worktime, and that even when the Store Director was present, the ASM was nevertheless over the center-store operations and employees. Ridley's here incorporates its responses to the disputed facts below starting with Fact 16 through Fact 130.

8.     Plaintiffs "object" to fact 8 because they "cannot state" (i.e., they have no evidence) that the factual statement is not true. The lack of contrary evidence is not the basis for an objection.

16.     Plaintiffs did not present any contrary facts to dispute Fact 16, but instead qualify the factual statement claiming that Meats "had to wait for the Store Director with major decisions," and citing to a post-deposition declaration claiming he did not have authority to hire, fire, discipline or otherwise make any "major decisions." That explanation is at irreconcilable odds with Meats' sworn testimony that the entire store was under his supervision for two to three hours each day, and one to two days a week. Regardless, his declaration states nothing about waiting for the Store Director, and thus offers no support for this purported dispute. The fact remains undisputed.

17.     Similarly, in "dispute" of fact 17, Plaintiffs did not present any contrary facts, but instead claim that Meats "did not have the final say on anything." That statement does not dispute sworn testimony that he supervised center store ops and employees. (Meats Dep., 28:14-18.)[1]

18.     Plaintiffs also do not present any facts contrary to Fact 18. Instead, they add that Meats would frequently direct employees to the Store Director. That may be the case, but does not constitute a dispute of the fact, based on Meats' sworn testimony that he supervised the center store employees, made sure they had what they needed, answered their questions, and listened to their complaints and venting, which did not necessarily need "resolving," something he testified that he did "quite a bit." (*Id.,* 28:19-25; 29:18-24; 39:1-5; 40:17-20; 41:12-24.)

19.     Plaintiffs did not present any facts contrary to Fact 19, but instead state that schedules Meats prepared had to be approved, and the store director would also prepare schedules. That may be true, but does not dispute this factual statement. Plaintiffs further claim in dispute that Meats did not evaluate or discipline other employees. That is directly contrary to Meats' sworn

---

[1] Per D.C.Colo.LCivR 56.1(c), copies of the deposition testimony cited herein are not attached as exhibits to this reply, but were included as exhibits to Ridley's opening brief (ECF No. 36) and Plaintiffs' response (ECF No. 44).

testimony, in which he admitted to being involved in the evaluation and discipline process, giving feedback to employees, preparing evaluation forms, sitting in on evaluations, and stating that he had in fact sent an employee home as a grocery manager and could have done so as an assistant manager. (*Id.* at 39:17-40:1; 41:25-42:16, 44:17-45:9; 49:3-18; 52:20-53:2)

20.     Plaintiffs did not dispute Fact 20, but state only that Meats participated in formal evaluations as a witness only. That does not dispute Fact 20, and misrepresents Meats' testimony. He stated that when he attended, he "occasionally" acted as a witness. (*Id.* at 44:5-7.)

21.     Plaintiffs did not dispute Fact 21, but instead state that Meats was involved in the hiring process only when asked, which was not frequent, and did not make decisions. This is not a "dispute," and it misrepresents Meats' testimony. "Being asked" only applied to reviewing and sorting applications, with Meats stating that it "wasn't a super common occurrence." Regardless of whether or how often he was asked, the fact is undisputed that Meats was involved in the hiring process, including beyond his admitting to reviewing and sorting applications. (*Id.* at 45:17-46:6; 47:1-14.)

22.     Plaintiffs did not dispute Fact 22, but state only that Meats did not supervise the display process, and that "corporate or the Store Director made those decisions." While this qualification does not dispute the fact and Plaintiffs ignore a large portion of the fact, it also misstates Meats' testimony. Meats testified that he worked with the grocery manager and the store director to make display decisions, but that only right before he left, displays were decided at corporate, and that the store director would otherwise make "a lot" of the decisions. (*Id*. at 49:21-52:3.) Thus the fact remains undisputed that Meats was involved in the process, including decision making, as well as the other non-display merchandising responsibilities and decision-making

responsibilities stated in the original fact and ignored by Plaintiffs.

26.     Plaintiffs did not dispute Fact 26, but instead state that Meats performed these duties when the Store Director was not available. Ridley's does not dispute that Meats "pulled reports" when the Store Director was not available, however that does not constitute a dispute of the factual statement describing Meats' additional duties and responsibilities as an ASM. It is undisputed that these tasks were part of his responsibilities, which he performed during the Store Director's absence (2-3 hours a day, and 1-2 days per week, or approximately 30% of Meats' worktime). *See,* Fact 16.

27.     Plaintiffs did not dispute Fact 27, but misrepresented Meats' testimony and confused the record, stating that Meats was "simply present" at the meetings which were conducted by the Store Director. As Meats testified, there were two types of meetings—weekly corporate calls and department head meetings. With regard to the calls, Meats attended as often as he could, and he listened and took notes, with information then disseminated to the store employees as appropriate. At department meetings he gave input into areas he had knowledge of. (*Id.* 59:6-60:24.)

30.     Plaintiffs did not dispute Fact 30, stating only that Coombs' primary duty was manual labor and that she did not perform various personnel tasks. Plaintiffs' dispute ignores the fact as stated and is unsupported. At no time did Coombs ever describe her "primary duty." She testified that she did in fact train employees, made recommendations as to hiring and firing, and was involved in employee discipline, as stated in this fact. (Coombs Dep., 47:23-53:22.)

31.     Responding to Fact 31, Plaintiffs restated the same Fact 30 dispute. Plaintiffs' purported dispute ignored the fact as stated and is unsupported. Coombs admitted she trained

employees, made recommendations as to hiring and firing (including interviewing at least one employee that was eventually hired), it would not be unusual for her to provide feedback on employee evaluations, and she was involved in employee discipline. (*Id.* at 32:2-25; 47:8-53:22.)

34.     In response to Fact 34, Plaintiffs took deposition testimony out of context and in isolation when Coombs originally stated that she did not participate in any strategic meetings. When the question was clarified to include discussions about future growth, she admitted to participating in at least two of these meetings. (*Id.,* 61:10-63:20.)

36.     In response to Fact 36, Plaintiffs stated only that Coombs was a store director for approximately three months and did not know all of the responsibilities. Coombs did so testify, but that did not constitute a dispute of her sworn testimony that, based on her experience as both ASM and Store Director, and other than "most of the interviewing," she responded to the question, "so you basically did the same thing as a store director that you did as an assistant manager," stating "For the time I was there, yes." (*Id.* 67:19-21.)

50.     Plaintiffs did not dispute Fact 50 directly, but instead listed what they claim to be Donovan's "primary duties." Plaintiffs' dispute is contrary to sworn testimony. There is no dispute he engaged in manual labor, but that was by no means his only or even primary duty. He also: had primary responsibility over the center-store and center-store employees; supervised the dairy and frozen foods managers; supervised entire store, all departments and employees up to four hours a day, and one to two days a week; coached and gave feedback to, guided and directed, answered questions of, and responded to complaints of employees; planned work for center-store employees, and checked in with the other department managers; understood his duties and responsibilities included training employees, providing feedback to the store director regarding employees under

him, sitting in on or recommending discipline of employees, and input into employee hiring; ordered dry inventory, filled out sales, purchases and cash forms, and merchandised; walked around the store looking for and addressing problems, and directing employees; opened or closed the store; on opening he put the tills out; when closing, he would make sure necessary product was covered—such as produce, and then walk the grocery department and made sure all of the ad items were full, checked the back doors, locked up the back doors, and made sure that frozen food was frozen and that there were no issues. Then he would count out the tills and the safe and the lottery, and then locked up to leave; and he made bank deposits. (*E.g,* Donovan Dep., 20:10-37:4; 41:20-42:3.) Donovan's declaration omitted these prior, undisputed admissions.

51.     In response to Fact 51, Plaintiffs made the identical "dispute" as with Fact 50, ignoring Fact 51 as written entirely. Ridley's here incorporates its response to the Fact 50 dispute.

52.     Plaintiffs did not dispute Fact 52, but stated instead that "major decisions had to wait for the Store Director." In his declaration, Donovan suggested a major decision is to hire, fire, discipline or other similar decisions. To the extent those constitute the "major" decisions, Ridley's does not dispute that he alone could not hire or fire employees, though he was expected to be involved in such decisions, as he himself testified. (*Id.,* 27:17-28:4, 29:4-12.)

53.     Plaintiffs did not dispute Fact 53, but instead confused the record trying to downplay what Donovan did. For example, as to coaching and providing feedback, Donovan did state that he would do so in the absence of the store manager, but also stated that he would give informal feedback which he described as his "professional advice." (*Id.* 28:5-15.) Otherwise he regularly gave instructions to the grocery department employees, and listened to and tried to resolve employee complaints. (*Id.,* 25:20-26:20.) Fact 53 remains undisputed.

54.     Plaintiffs' dispute of Fact 54 missed the fact entirely. Ridley's did not state that Donovan did schedules, only that he planned work for center-store employees, which Donovan admitted (*id.,* 26:10-20). He also never stated that he checked in with managers only when the store director was gone. He stated that one of the activities he did during the day was checking in with departments. (*Id.,* 22:9-10). Then, when asked if he "had to" do that, he stated: "I did, only because that's the world that I came from, as far as being a store manager. . . . But when Michelle wasn't in the store, that would be my responsibility." (*Id.,* 26:21-27:4.)

55.     Plaintiffs failed to dispute Fact 55 as propounded, instead stating that during his approximate one-month stint at Ridley's, Donovan did not train, provide feedback, or make recommendations on discipline, or hiring and firing. Given his being there for only a month, that is not surprising, and Ridley's does not contend otherwise—except that he admitted to giving informal feedback to employees during his employment. (*Id.* at 28:11-15.) The fact as stated, which focuses on what he understood his responsibilities to entail, remains undisputed.

84.     Plaintiffs admitted Fact 84, stating only that Glanz did not direct employees' work when the store director was present. Regardless, Glanz later clarified in her deposition that under certain circumstances she would in fact direct an employee's work, even if the store director is there, and that she "certainly ha[d] the authority to direct people to do something . . . even when the store manager is there." (Glanz Dep., 32:2-21.) Fact 84 remains undisputed.

85.     Plaintiffs admitted Fact 85, but stated that Glanz only occasionally addressed complaints, coached, or disciplined, and that it was the Store Director's job. Even so, Plaintiffs misrepresented her testimony. She stated that she addressed complaints, but not often because they had very few employees. (*Id.* 34:1-8.) She did not similarly qualify her coaching, which she did

when the store director was not there (i.e., 2-3 hours each day, and 1-2 days per week) (*Id.,* 30:14-33:9, 34:12-35:1). As to discipline, she stated that she responded "if need be," and she would "get with the store manager and make sure that he agrees that . . . the disciplinary action needs to be taken." (*Id.,* 35:5-14.) Thus, she made recommendations to discipline. (*Id.* 35:15-20.) She never stated this was "ultimately the Store Director's job." It was clearly part of her job.

86.     Plaintiffs admitted Fact 86, but stated that Glanz was responsible for this work only when the Store Director was not present, citing to a single page of Glanz' deposition. Plaintiffs misrepresented Glanz' testimony. The qualification of doing such work in the absence of the store director was only in connection with doing "bookwork," and does not apply to the safe, or bank deposits. (*Id.* 41:2-18.) Regardless, given the undisputed fact that the Store Director is absent 3-4 hours each day, and 1-2 days per week, Plaintiff's qualification was without substance.

87.     In response to Fact 87, Plaintiffs addressed only the fact that Glanz had some discretion over displays, stating that displays were set and no discretion was needed. Plaintiffs misstated Glanz' testimony. While Glanz did testify that generally displays are "set," she admitted to making decisions on "pop vendors," or if they had extra space for a display, or where to put product in the event of a special event like case sales. (*Id.,* 42:5-19, 51:23-52:6.)

89.     Plaintiffs did not dispute Fact 89, but stated that "most of her work was cashiering and stocking shelves." Plaintiffs mispresented her testimony. When she quantified her purely management work at 25%, she was asked what the other 75% consisted of. She stated cashiering, stocking, maintaining the dairy department, and "doing" freight, but she also admitted that during that time she did not "turn off" her management responsibilities, and that employees would regularly come to her and she would respond, and keep the store functioning. (*Id.,* 54:23-56:3.)

91.     Plaintiffs did not dispute Fact 91, but stated that Harris was senior manager "only occasionally," and that "major decisions" had to wait for the store director, citing to Harris' declaration. The declaration did not state that he was senior manager "only occasionally," and the fact is undisputed that he was the senior manager on site approximately 30% of his worktime. As to "major decisions," Ridley's does not dispute that Harris alone could not hire or fire, though he admitted he could impose discipline, like sending an employee home. (Harris Dep.., 70:5-9).

92.     Plaintiffs did not address Fact 92, but instead stated that there were other duties that Harris did not do, including scheduling and evaluations. While not a dispute, Plaintiffs misstated his testimony. While Harris stated that he never did any actual "scheduling," he admitted that he could adjust a schedule and send someone home if the store director was not there (*Id.,* 60:22-61:4), and that he participated in evaluations, stating "I'm sure [the store director] asked me for input." (*Id.,* 75:13-76:5). Regardless of these additional duties, the fact itself remains undisputed.

93.     Plaintiffs did not dispute Fact 93, but stated only that Harris did not have the authority to resolve "all" complaints, and that the Store Director did employee evaluations, compensation, and hiring/firing. Ridley's never claimed otherwise. The fact remains undisputed that he could resolve employee complaints (even if not "all" of them), and provided input into evaluations, raises, compensation, and hiring/firing. (*Id.,* 73:17-74:23; 75:13-77:25.)

94.     In response to Fact 94, Plaintiffs misrepresented Harris' testimony. He never said he would implement accommodations only under direction of the Store Director. He admitted that under some circumstances he could and would do it alone. (*Id.,* 105:18-106:7.)

98.     Plaintiffs did not dispute Fact 98, instead stating that Harris did not have authority to discipline or fire other employees. Such a contention is inapplicable. Regardless, the "dispute"

is also misleading. While he could not himself fire someone, he admitted input into terminations, and admitted that he could send someone home for disciplinary reasons. (*Id*., 70:5-9; 75:13-77:25.)

116.    In response to Fact 116, Plaintiffs misrepresented Rios' sworn testimony. Rios admitted that he was over dairy and frozen food, and while he at first denied that the DM was "under" him, he later said that if the DM had questions or problems he would report them to Rios to address or escalate. (Rios Dep., 26:20-28:6). And while he initially stated he was senior manager 10% of the time, he later clarified that it was in fact up to 30%. (*Id*., 51:15-25.) Rios never stated that he lacked authority, but simply that he did not schedule, nor train during his brief tenure because there were "a lot of senior people there." (*Id*., 28:10-11; 29:23-30:1). He admitted input into evaluations, providing feedback, and resolving employee's "basic" complaints (*Id*., 29:5-16; 31:22-32:7). He described his "main" duties as reconciling end-of-day cash and other "back office stuff," order/fill the freezer, order/fill dairy, order/fill dry or non-perishable items, and stock, along with merchandising. (*Id*., 24:14:25:5.) He did state that he "mainly stocked," but that was in the context of admitting his primary duty was to walk around the store, making sure it was functioning and people were working, helping, and making sure the store operated efficiently. (*Id*., 43:10-17.) Even when stocking, he admitted that he never lost these responsibilities as ASM. (*Id*., 44:3-8.)

117.    Plaintiffs did not directly dispute Fact 117, but asserted the identical Fact 116 dispute, and Ridley's here incorporates the same response. Fact 117 remains undisputed.

118.    Plaintiffs did not directly dispute Fact 118, but asserted a dispute similar to Facts 116 and 117. Ridley's here incorporates its responses to those facts.

119.    In response to Fact 119, Plaintiffs appeared to dispute only that Rios had input into store financials when ordering product. However they cited to the same testimony in which he

admitted that he had input into store financials, making sure he did not exceed his budget, stating, "yeah. Yes. So, I mean, as far as ordering product, yes." (*Id.*, 39:18-24.) Fact 119 is undisputed.

125.    Plaintiffs did not directly dispute Fact 125, but instead listed, as with the other Plaintiffs, what they considered Whitaker's main duties. Ridley's does not dispute that he did such tasks, however he never testified that these were his "main" duties. While he certainly was expected to do such tasks, he admitted that his "job as an assistant manager [was] to make sure the whole store is operating." (Whitaker Dep., 40:12-19.) And regardless of these tasks, he was responsible for the smooth operation of the center-store operations, as stated in the fact, and supported by record evidence. (*Id.,* 42:20-43:25.) Whitaker's "dispute" that his job did not include employee supervisory duties is contrary to Whitaker's sworn testimony. He testified that he: was able to direct and instruct employees, train/coach employees, and provide feedback to employees. resolved or escalated employee complaints; had responsibility for employee and customer safety, with the authority to direct employees to respond to unsafe conditions; participated in new hire interviews, and provided feedback on interviewees, and at least one of his recommendations was hired; participated in the employee evaluation process, providing feedback on employees he had knowledge of; offered his opinion regarding employee promotions; participated in at least one employee disciplinary meeting. (*Id*., 34:15-35:16; 44:1-22; 47:6-51:21; 53:20-54:3; 58:12-21.) His Declaration omitted these sworn admissions and has no weight here.

126.    Plaintiffs did not dispute Fact 126, but instead claim that he was not the senior manager "very often." Whitaker never said "very often." He was undisputedly the senior manager on site when the store director was not there, including at the least the director's one day off a week, and one to two hours each day. (*Id.,* 29:4-31:3; 62:23-64:9.) Beyond that unsupported

dispute, Plaintiffs restate the Fact 125 dispute, and Ridley's here incorporates its response to the dispute of Fact 125.

127.    Plaintiffs did not directly dispute Fact 127, but made the same unsupported claims as with Facts 125-26 regarding Whitaker's main duties, and other duties they claim he did not do. Ridley's incorporates its responses to Plaintiffs' dispute of Facts 125-26.

128.    Plaintiffs did not directly dispute Fact 128, but made the same unsupported claims as with Facts 125-26 regarding Whitaker's main duties, and other duties they claim he did not do. Ridley's incorporates its responses to Plaintiffs' dispute of Facts 125-26.

130.    Plaintiffs did not directly dispute Fact 130, but made the same unsupported claims as with Facts 125-26 regarding Whitaker's main duties, and other duties they claim he did not do. Ridley's incorporates its responses to Plaintiffs' dispute of Facts 125-26.

## II.    ARGUMENT

### A.    Donovan's Claims Are Time Barred Because there is No Evidence of Willfulness

Plaintiffs came forward with no contrary evidence of willfulness, instead claiming the Court should not make such a determination when liability remains in dispute, and citing for support to a Virginia case, *Epps v. Scaffolding Sols., LLC*, Civ. No. 2:17-cv-562, 2019 WL 3363790 (E.D. Va.). *Epps* does not help Plaintiffs. In that case the court stated that findings of willfulness "necessarily involve questions of the employer's intent in changing the time clock policy," which questions in that case "remain sharply contested." *Id.* at *12. Ridley's does not contend here that summary judgment should be granted on issues that remain contested. Willfulness is a separate inquiry from the underlying liability, however, with courts looking at factors such as any prior findings of FLSA violations (*E.g., Bracamontes v. Bimbo Bakeries U.S.A.*

*Inc.*, No. 15-cv-02324-RBJ, July 14, 2017, 2017 WL 3190740, *6-7 (D. Colo.) (granting summary judgment to defendant on willfulness), or whether the employer followed industry standards (*Boyer v. Celerity Solutions Group, LLC*, 482 F.Supp. 3d 1122, 1136 (D. Colo. 2020). In this case Plaintiffs failed completely to articulate *any* contrary record evidence of willfulness and thus the issue is ripe for dismissal of Donovan's claims by reason of the statute of limitations.

**B.    The Undisputed Evidence Shows that All Remaining Plaintiffs Were Properly Classified as Exempt Under the FLSA's Administrative Exemption.**

Plaintiffs failed to create a factual issue regarding their administrative duties, and such facts show that the remaining plaintiffs were properly classified as exempt/administrative.

### 1.    Plaintiffs Misconstrue the Primary Duty Requirements

Plaintiffs misrepresented Ridley's argument, claiming Ridley's position to be that "because Plaintiffs occasionally performed administrative tasks while the Store Director was off," they satisfy the primary duty test. They then go to great lengths listing out all of the manual labor tasks they did, taking the position that occasional performance of such administrative tasks is insufficient as a "primary duty," even if such tasks are the most important duty they perform and the reason they were hired, as the undisputed facts show. *See,* 29 C.F.R. § 541.700(a) (defining "primary duty" to include the most important duty that the employee performs).

Plaintiffs are wrong on both accounts. First, Ridley's has never claimed that Plaintiffs performed administrative tasks *only* when the store director was off. In connection with the executive exemption, Ridley's does argue that Plaintiffs' admitted supervision of the entire store along with all of its employees for at least 1/3 of their work time is sufficient to meet the primary duties test in connection with the executive exemption. The undisputed evidence, however, shows that over and above that significant time, Plaintiffs also performed numerous other duties at *all*

times, including while the store director was present. This included full-time responsibility over center-store operations and employees, along with: product merchandising, displays, and signage; ordering store product and monitoring purchase; opening and/or closing the store on time; completing store paperwork and sales reports; counting and securing the tills; preparing and making bank deposits; securing the store; filling out accident and injury reports and other various reports; attending and participating in store and corporate management meetings; employee and customer safety; and enforcing store policies. Plaintiffs rightly did not attempt to dispute these facts describing these administrative duties.

And whether or not Plaintiffs performed these duties more than 50% of their work time is immaterial. As the applicable regulation states, [t]ime alone . . . is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. 29 C.F.R. § 541.700(b). Thus, Plaintiffs' argument that the majority of their work time was taken up with manual labor, even if unsupported by their sworn testimony, would not prevent summary judgment in light of the undisputed factual record showing that Plaintiffs meet the primary duty test for the administrative exemption because these were undisputedly the most important tasks they performed and the reason they were hired.

### 2.      Plaintiffs' Supporting Caselaw is Inapplicable.

In opposition to Ridley's argument on the *administrative* exemption, Plaintiffs criticized Ridley's for "rel[ying] on a total of two district court cases," and instead cite to three cases in support of their claim that courts have denied summary judgment motions where plaintiffs performed far more non-manual labor than Plaintiffs. Plaintiffs' reliance on their three cases is also misplaced. All three of the cases cited by Plaintiffs to counter Ridley's argument on the

*administrative* exemption analyze only the *executive* exemption, and one of the three, the *Morgan* case, was not on summary judgment but after a jury verdict. Ridley's two cases have application here. Plaintiffs' three cases, that have nothing to do with the *administrative* exemption, do not. And addressing similar if not identical responsibilities as Plaintiffs, Ridley's two cases are directly on point and show that Plaintiffs were properly classified as *administrative* exempt.

### 3.  The Undisputed Facts Show that Plaintiffs Exercised Discretion and Independent Judgment as to Matters of Significance.

Plaintiffs are correct that they must exercise discretion and independent judgment on matters of significance in order to meet the *administrative* exemption, however Plaintiffs then confuse the legal standard by focusing solely on their *executive*-type duties (i.e., managing employees), arguing that Plaintiffs had no authority to do scheduling, handle employee complaints, train other employees, hire, interview, discipline, evaluate or fire other employees. (Mem. Opp., p. 16.) Plaintiffs' statement, based solely on five not-coincidentally-identical post-deposition declarations, is unsupported by the record evidence; it also ignores the vast undisputed evidence of other tasks on which they exercised discretion and independent judgment.

While there is no dispute that the Plaintiffs could not, alone, hire or fire employees, each of the Plaintiffs testified variously to other duties they later deny via declaration, including scheduling, handling employee complaints, employee training, and being involved with the interviewing, evaluating, hiring, and discipline process. (*See* Facts 15-21, 30, 51-55, 84-85, 91-94, 116-17, 125-27.) Thus, Plaintiffs' statements are unsupported by record evidence. Importantly, they also ignore the other *administrative* tasks in which they exercised discretion and independent judgment, including with regard to product merchandising, displays, and signage; ordered store product and monitored purchases to make sure the store was making money or not exceeding

budgets; opening and/or closing the store on time; completing store paperwork and sales reports; counting and securing the tills; preparing and making bank deposits; securing the store; filling out accident and injury reports and other various reports; attending and participating in store and corporate management meetings; employee and customer safety; and enforcing store policies. Plaintiffs never raised any disputes, nor could they honestly, as to these significant administrative duties in which the Plaintiffs exercised discretion and independent judgment.

Thus, while their precise duties varied, each of these Plaintiffs performed significant administrative duties that required discretion and independent judgment. Plaintiffs were properly classified as exempt administrative employees, and their claims fail as a matter of law.

## C.   The Executive Exemption Applies to Plaintiffs.

While Plaintiffs were properly classified as administrative exempt, the undisputed evidence shows that also the executive exemption applies to Plaintiffs. Plaintiffs argue that Ridley's cannot meet the second and fourth prongs of the test. Plaintiffs are wrong.

### 1.   Plaintiffs Meet the Primary Duty as Management Test

Plaintiffs argue that they cannot meet the primary duty test because, while apparently admitting that at the very least Plaintiffs were the senior manager on-site for 1/3 of their work time, "one third is not a majority of the time . . . and [Ridley's] failed to prove that Plaintiffs simply quit performing their daily manual work and switched to purely management duties [while] the Store Director was absent." (Mem. Opp., p. 19.) Plaintiffs ignore the fact that, in addition to the management of the entire store for 1/3 of their worktime, Plaintiffs also managed on a full-time basis the center-store operations, and were involved in other management tasks specifically included in the regulation's definition of management, such as maintaining sales records; handling

complaints; being involved in discipline; planning work; determining merchandise to be bought, stocked and sold; controlling the flow of merchandise; and employee and customer safety and security. This occurred 100% of the time.

Plaintiffs' argument that they somehow needed to quit performing their "daily manual work" and switch to purely management duties ignores workplace realities and is legally false. Hence, the regulation's specific example as to assistant managers in a retail setting:

> Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty *even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register*.

*Id.* at § 541.700(c) (emphasis added).

Similarly, regardless of how frequently Plaintiffs claim they participated in such activities in comparison to their other non-exempt activities, or how much they try and downplay the importance of their management role, "management" was nevertheless their primary duty, and the undisputed evidence shows that is why they were hired.

### Plaintiffs had authority to "Hire and Fire."

Plaintiffs argued that Ridley's cannot meet this test because it did not provide specific evidence where these Plaintiffs' personnel decisions regarding a change in personnel status were given particular weight, citing to an 8th Circuit case, *Madden v. Lumber One Home Ctr., Inc.* The *Madden* Court considered the plaintiff's verdict in light of what appeared to be a motion for judgment notwithstanding the verdict, and upheld the jury verdict in light of evidence that the employee provided a recommendation on at least one employee who was eventually hired. This prong is not so limited. As Ridley's cited cases establish, it can include, for example, being

involved in employee evaluations, discipline, interviewing, and coaching as the Plaintiffs all were. (Mot. Summ. J., pp. 42-43.) Plaintiffs specifically testified that they variously supervised, directed, coached, resolved complaints of, evaluated, interviewed, and/or made recommendations regarding hiring, firing, promotions, and/or terminations of employees. (*See* Facts 15-21, 30, 51-55, 84-85, 91-94, 116-17, 125-27.) These are the specific activities that fall squarely within the executive exemption. This undisputed evidence shows that Plaintiffs meet the fourth prong of the executive exemption test, and thus this Court should enter summary judgment.

## III.    CONCLUSION

Ridley's respectfully requests that the Court grant its Motion and dismiss Plaintiffs' claims.

DATED this 13th day of June, 2023

SNELL & WILMER L.L.P.

*/s/ David P. Williams*
David P. Williams (UT#07346)
SNELL & WILMER L.L.P.
15 W. South Temple, Suite 1200
Salt Lake City, Utah 84101
Telephone:  801.257.1900
Email: dawilliams@swlaw.com
***Attorneys for Defendant***

## **CERTIFICATE OF SERVICE**

This is to certify that on June 13, 2023, a true and correct copy of the above and foregoing document was filed using the Court's CM/ECF system, which effectuated electronic service on all counsel of record.

*/s/ David P. Williams*