IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01070-PAB-KAS

STANTON MEATS,
KRESTINA COOMBS,
DAVID DAVIS,
BRIAN DONOVAN,
CHRIS GALLEGOS,
DESTINY GLANTZ,
CAMERON HARRIS,
JULIE ANNE NEIL,
ANDREZ RIOS,
JARED WHITAKER, and
WILLIAM WULF,

      Plaintiffs,

v.

RIDLEY'S FAMILY MARKETS, INC.,

      Defendant.

_____

**ORDER**
_____

This matter is before the Court on Defendant Ridley's Family Markets, Inc.'s

Motion for Summary Judgment [Docket No. 36]. Plaintiffs Stanton Meats, Krestina

Coombs, David Davis, Brian Donovan, Chris Gallegos, Destiny Glantz, Cameron Harris,

Julie Anne Neil, Andrez Rios, Jared Whitaker, and William Wulf (collectively, the

"plaintiffs") filed a response. Docket No. 44.[1] Defendant Ridley's Family Markets, Inc.

---

[1] The amended complaint also contains claims by plaintiff Jason Carillo. Docket No. 9. However, on April 19, 2023, all parties stipulated to dismiss Mr. Carillo from this case without prejudice. Docket No. 35. Mr. Carillo was terminated from the case as of the entry of the stipulation of dismissal. *See* Docket No. 37 at 2.

("Ridley's") filed a reply.  Docket No. 50.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.     BACKGROUND[2]

On May 2, 2022, plaintiffs filed this lawsuit.  Docket No. 1.  Plaintiffs assert claims against Ridley's under the Fair Labor Standards Act ("FLSA") for misclassifying plaintiffs as exempt and failing to pay plaintiffs overtime wages for hours worked more than forty hours per week.  Docket No. 9 at 7-8.  Additionally, plaintiffs assert claims under the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. § 8-4-101, and the Colorado Minimum Wage Order ("CMWO").  *See id*. at 8.

Ridley's is a family-owned chain of supermarkets and operates stores in Idaho, Wyoming, Utah, Nevada, and Colorado.  Docket No. 36 at 4, ¶ 1.  Plaintiffs were Assistant Store Managers ("ASM") at Ridley's stores.  *Id*. at 6, ¶ 9.  Each Ridley's store has a store director and an ASM.  *Id*. at 4, ¶ 2.  Store directors and ASMs often work alternating schedules and the ASM is the senior manager onsite when the store director is absent, which is typically about thirty percent of an ASM's time.  *Id*., ¶ 3.[3]

ASMs are paid on a salary basis in an amount substantially more than the hourly employees that they supervise.  *Id*. at 5-6, ¶ 7.  For example, Mr. Meats, who held various hourly positions with Ridley's, earned between $206 and $384 per week as an hourly employee, but earned between $900 and $1,087.50 per week as an ASM.  *Id*.

---

[2] The following facts are undisputed unless otherwise indicated.  The Court notes that both sides include many statements of fact that are unsupported by the cited evidence.

[3] Plaintiffs dispute what types of management tasks the ASMs could undertake.  Docket No. 44 at 5, ¶ 3.  However, plaintiffs do not dispute that the ASM is the senior manager onsite when the store director is absent.  Accordingly, the Court deems this portion of the fact undisputed.

Furthermore, ASMs are eligible for a bonus, largely based on the financial results of their stores, whereas hourly employees are not eligible for the same bonus. *Id*. Ridley's paid all the plaintiffs more than $684 per week. *Id*.

Plaintiffs were originally part of an FLSA collective action filed in this District, *Esparsen v. Ridley's Family Markets, Inc*., Case No. 18-cv-01556-RM. *Id*. at 6, ¶ 9. Each plaintiff filed a notice of consent to join the *Esparsen* case. *Id*., ¶ 10. Mr. Davis filed his consent on April 14, 2020; Mr. Gallegos filed his consent on April 6, 2020; Ms. Neil filed her consent on April 14, 2020; Mr. Wulf filed his consent on April 13, 2020; and Mr. Donovan filed his consent on April 24, 2020. *Id*., ¶ 11.

**A. David Davis, Chris Gallegos, Julie Anne Neil, William Wulf, and Brian Donovan**

Mr. Davis' last date of employment at Ridley's was in January 2016. *Id*. at 12, ¶ 38. Mr. Gallegos' last date of employment was March 13, 2017. *Id*. at 19, ¶ 81. Ms. Neil's last date of employment was in June 2016. *Id*. at 25, ¶ 114. Mr. Wulf worked at Ridley's from September 18, 2016 through September 24, 2016. *Id*. at 6-7, ¶ 13.

Mr. Donovan worked at Ridley's from March 2018 until his termination on April 26, 2018. *Id*. at 14, ¶ 49. During his last week working for Ridley's, Mr. Donovan did not work at all on April 24 or April 25, 2018, and Mr. Donovan only worked 5 hours and 20 minutes on April 26, 2018. *Id*. at 6, ¶ 12. During his last week, Mr. Donovan worked 26 hours total for the week. *Id*.

**B. Stanton Meats**

Mr. Meats has held various positions at Ridley's including as a bagger and an ASM. *Id*. at 7, ¶ 14. Mr. Meats began working as a bagger in June 2005 at Ridley's store in Hyrum, Utah. *Id*. Mr. Meats was promoted to ASM in April 2015 at Ridley's

3

store in Midway, Utah.  *Id.*  In January 2017, Mr. Meats became the ASM in Ridley's

store in Pinedale, Wyoming.  *Id.*  Mr. Meats' last day of employment at Ridley's was

May 2, 2019.  *Id*. at 10, ¶ 28.

     As an ASM, Mr. Meats was responsible for ensuring that the store functioned

efficiently.  *Id*. at 7, ¶ 15.  For example, Mr. Meats walked around the store looking for

and solving problems as needed, helping customers and employees, and "doing

whatever needed to be done."  *Id*.  Mr. Meats worked alongside a store director,

although their schedules were not identical; Mr. Meats was the senior manager onsite

for two to three hours each day, and one to two full days a week.  *Id*., ¶ 16.[4]  Mr. Meats

supervised "center store" employees, made sure they had what they needed, answered

their questions, instructed them, listened to their complaints, and stepped in to help as

needed.  *Id*. at 7-8, ¶ 18.[5]  There were typically two to ten center store employees

present on any given day.  *Id*.  Mr. Meats' duties and responsibilities also included

training and providing feedback to employees, delegating and directing work, and

assigning specific tasks.  *Id*. at 8, ¶ 19.[6]

---

    [4] Plaintiffs' response to this fact states, "Disputed.  Meats was the senior manager on-site during these hours, however, he had to wait for the Store Director with major decisions."  Docket No. 44 at 7, ¶ 16 (citing Docket No. 44-10 at 4, ¶ 25).  This response does not dispute defendant's proffered fact and the Court therefore deems the fact undisputed.

    [5] Plaintiffs' response to this fact states, "Disputed.  Meats directed complaints to the Store Director.  Meats did not have the final say on anything."  Docket No. 44 at 7, ¶ 18 (citing Docket No. 44-3 at 8, 11, 28:11-18, 40:25-41:6).  This response does not dispute defendant's proffered fact that Mr. Meats supervised center store employees and listened to employee complaints.  Accordingly, the Court deems this fact undisputed.

    [6] Plaintiffs dispute whether Mr. Meats' responsibilities included scheduling other employees or disciplining employees.  Docket No. 44 at 8, ¶ 19 (citing Docket No. 44-3 at 11-12, 39:17-40:12, 43:16-44:7, 44:13-16).

As an ASM, Mr. Meats participated in the employee evaluation process and occasionally sat in on formal evaluations.  *Id.*, ¶ 20.[7]  Mr. Meats occasionally provided advice to the store director on pay rates and raises.  *Id.*  Mr. Meats was asked "a couple of times" to provide feedback on the promotion of employees.  *Id.*  Mr. Meats was also involved in the hiring process, including reviewing applications, sitting in on interviews, asking questions, and afterwards discussing the applicant with the store director.  *Id.*, ¶ 21.[8]

Mr. Meats worked with the store director and the grocery manager to decide on particular displays and what products were needed for the displays; he frequently wrote grocery orders; and also monitored whether purchases were being kept low as compared to sales.  *Id.*, ¶ 22.[9]  Mr. Meats gave input on where to display products on the shelves.  *Id.*

Depending on his schedule, Mr. Meats opened and closed the store two or three times a week.  *Id.* at 9, ¶¶ 23, 25.  As part of opening the store, Mr. Meats used the computer in the manager's office to enter the sales from the previous day.  *Id.*, ¶ 23.  He

---

[7] Plaintiffs' response to this fact states, "Disputed.  Meats was present at these meetings to be a witness only."  Docket No. 44 at 8, ¶ 20 (citing Docket No. 44-3 at 12-13, 44:2-7, 48:4-7).  This response does not dispute the fact that Mr. Meats attended evaluation meetings.  Accordingly, the Court deems this fact undisputed.

[8] Plaintiffs dispute how frequently Mr. Meats was involved in the hiring process and assert that Mr. Meats did not make any hiring decisions.  *See* Docket No. 44 at 8, ¶ 21 (citing Docket No. 44-3 at 13, 46:19-47:11; Docket No. 44-10 at 3-5, ¶¶ 12-32).

[9] Plaintiffs' response to this fact states, "Disputed.  Meats was only involved in the process, not supervising it.  The corporate or the Store Director made those decisions."  Docket No. 44 at 8, ¶ 22 (citing Docket No. 44-3 at 14, 50:12-19).  This response misstates Mr. Meats' deposition testimony where he stated that he was "involved" in deciding the displays with the store director and the grocery manager, but "there was a program right before I left where displays were decided at corporate level."  *See* Docket No. 44-3 at 14, 50:3-16.  Accordingly, the Court deems this fact undisputed.

made the cash deposit to deliver to the bank and checked the email for any communications. *Id*. Mr. Meats was also responsible for aspects of store security. *Id*., ¶ 25. Mr. Meats had a set of keys and had access to the store safe. *Id*. When opening the store, Mr. Meats would verify the cash count from the closing manager, take the tills out of the safe, and put them in the registers. *Id*. When closing the store, he would count down the tills, prepare a deposit for the next morning, and have a final count for the safe for the day. *Id*. In one store, Mr. Meats was also responsible for making sure the sporting goods or hardware manager locked the firearms at night. *Id*.

As an ASM, Mr. Meats also had responsibilities regarding employee and customer safety. *Id*., ¶ 24. When an employee or customer got injured, Mr. Meats would fill out an accident report and notify the store director and the owner, Mark Ridley. *Id*. Mr. Meats recalled filling out "a couple" of accident reports. *Id*. Mr. Meats was responsible for addressing hazards, either delegating the work to someone else or doing it himself, and was responsible for enforcing employee safety policies. *Id*. Mr. Meats also filled out workers' compensation forms whenever employees got hurt. *Id*.

Mr. Meats worked at several stores which had store-specific features, such as a gas station, a U-Haul rental, a Subway restaurant, a post-office, or a pizzeria. *Id*. at 9-10, ¶ 26. Mr. Meats had some responsibilities in these stores for fuel usage and U-Haul reports, Subway reports, and processing packages received from customers. *Id*.[10]

---

[10] Plaintiffs' response to this fact states, "Disputed. Meats was performing these duties when the Store Director was not available." Docket No. 44 at 9, ¶ 26 (citing Docket No. 44-3 at 8, 27:12-15). This response does not dispute that Mr. Meats had some responsibilities for performing these tasks. Accordingly, the Court deems this fact undisputed.

Mr. Meats attended weekly conference calls with the corporate office as often as he could; in these meetings, Mr. Meats took notes and disseminated information to other employees.  *Id*. at 10, ¶ 27.  Mr. Meats actively participated in department head meetings and provided input into areas he had knowledge of.  *Id*.[11]

### C. <u>Krestina Coombs</u>

Ms. Coombs is a former employee in Ridley's store in Hyrum, Utah, where she held a variety of positions over her 11-year career, including deli clerk, closing night manager, grocery manager, ASM, and store director.  *Id*., ¶ 29.  Ms. Coombs was an ASM from January 2016 to October 2017, as well as from August 2018 to December 2018.  *Id*.  Ms. Coombs was store director from December 2018 to March 2019.  *Id*.  Ms. Coombs' last day of employment at Ridley's was March 23, 2019.  *Id*. at 11, ¶ 37.

As an ASM, Ms. Coombs was responsible for giving directions and instructions to employees, planning work, checking on employees' work, and training.  *Id*. at 10, ¶ 30.[12] Additionally, during the times that Ms. Coombs was the senior manager onsite, she was in charge of the entire store.  *Id*.  Moreover, during the last two months of Ms. Coombs' time as an ASM, her store director was absent for "probably at least 90 percent of the

---

[11] Plaintiffs' response to these two facts states, "Disputed.  Meats was simply present at the meetings.  The meetings were conducted by the Store Director and Meats did not provide any input."  Docket No. 44 at 9, ¶ 27 (citing Docket No. 44-3 at 16, 59:19-60:21).  This response conflates Mr. Meats' deposition testimony.  Mr. Meats testified that he attended the weekly conference calls with corporate as often as he could, but he did not provide input in those meetings.  Docket No. 44-3 at 16, 59:6-21.  In contrast, Mr. Meats testified that, with respect to department head meetings, he provided input into areas that he had knowledge of.  *Id*., 60:6-24.  Accordingly, the Court deems this fact undisputed.

[12] Plaintiffs dispute whether Ms. Coombs had the authority to evaluate, discipline, hire, or fire other employees.  Docket No. 44 at 9, ¶ 30 (citing Docket No. 44-6 at 9, 13-14, 32:6-33:10, 49:14-50:17, 53:12-16).

time" so she was the senior manager onsite, during which time she was "basically managing the store," including directing employees, taking care of problems that arose, and resolving employee complaints.  *Id*.

Ms. Coombs' additional duties as an ASM included checking emails for customer complaints; ensuring employee time entries were correct; reporting employees for disciplinary action; and interviewing at least one job applicant.  *Id*. at 11, ¶ 31.[13]  Ms. Coombs was also responsible for employee safety, including regular store inspections and directing employees on clean-up tasks.  *Id*., ¶ 32.  Ms. Coombs assisted with store security, counting money onsite, opening the store, and responding to shoplifting incidents.  *Id*., ¶ 33.  Furthermore, Ms. Coombs' responsibilities included ordering store inventory.  *Id*., ¶ 35.  Ms. Coombs had discretion as to what types and amounts of products to order, particularly around the holidays, admitting that if she ordered too much or too little of something, that "fell on her shoulders."  *Id*.

### D.  Destiny Glantz

Ms. Glantz was hired as a deli manager for Ridley's store in Sheridan, Wyoming in March 2015, and became an ASM approximately a year later.  *Id*. at 19, ¶ 82.  As an ASM, Ms. Glantz was expected to walk around the store, look for problems and issues that needed to be solved, look for employees who were not working, and identify unsafe conditions.  *Id*. at 19-20, ¶ 83.

As an ASM, Ms. Glantz had supervisory authority over the grocery manager.  *Id*. at 20, ¶ 84.  Additionally, when the store director was not at the store, Ms. Glantz was

---

[13] Plaintiffs dispute whether Ms. Coombs had the authority to evaluate, discipline, hire, or fire other employees.  Docket No. 44 at 9, ¶ 30 (citing Docket No. 44-6 at 9, 13-14, 32:6-33:10, 46:1-9, 48:18-49:3, 49:14-50:17, 53:12-16).

the senior manager onsite and directed the work of around ten to fifteen employees on any given day.  *Id*.  Nevertheless, Ms. Glantz acknowledged that even when the store director was present, she had the authority to direct employees' work.  *Id*.[14]

Ms. Glantz's responsibilities also included addressing employee complaints, doing employee coaching, responding to disciplinary matters, making recommendations to the store manager as to employee discipline, and occasionally sitting in on new hire interviews.  *Id*., ¶ 85.[15]  Ms. Glanz had the combination to the store's safe, which held the store's money, the extra key to the pharmacy, and any lost-and-found wallets, purses, or credit cards.  *Id*., ¶ 86.  Ms. Glantz was also responsible for making bank deposits.  *Id*.  Furthermore, Ms. Glanz was responsible for purchasing products for the store, including how many products to purchase.  *Id*. at 20-21, ¶ 87.

Ms. Glantz's responsibilities as an ASM also included employee and customer safety.  *Id*. at 21, ¶ 88.  Ms. Glantz filled out hourly floor sweep logs, as well as any incident reports for customer or employee injuries.  *Id*.  Ms. Glantz estimated that the amount of time she spent solely on management-type tasks was about twenty-five percent of her time.  *Id*., ¶ 89.

---

[14] Plaintiffs' response to this fact states, "Disputed.  Ms. Glantz did not direct other employees' work when the Store Director was present."  Docket No. 44 at 15, ¶ 84 (citing Docket No. 44-7 at 32-34, 31:5-7, 31:23-33:6).  However, Ms. Glantz testified that she had the authority to direct employees' work when the store manager was present.  Docket No. 36-8 at 11, 32:11-21.  Accordingly, the Court deems this fact undisputed.

[15] Plaintiffs dispute how frequently Ms. Glantz addressed employee complaints or participated in employee coaching or employee discipline.  Docket No. 44 at 15, ¶ 85 (citing Docket No. 44-7 at 35-37, 34:3-36:20).

### E. **Cameron Harris**

Mr. Harris held various positions at Ridley's store in Pinedale, Wyoming, including starting as a hardware clerk, becoming an ASM in 2015, and serving as store director from 2017 to 2018. *Id.*, ¶ 90. At his request, Mr. Harris was transferred to Ridley's store in Highland, Utah in August 2018, where he worked as an ASM until his resignation in November 2018. *Id.*

As an ASM, Mr. Harris supervised the grocery department and its employees, directing their work and giving them instructions. *Id.* at 21-22, ¶ 91. Additionally, there were times that Mr. Harris was the senior manager onsite, during which time he oversaw the entire store and all the employees. *Id.*[16] As an ASM, Mr. Harris had similar authority as the store director, although Mr. Harris did not have the authority to do hiring and firing, directing department heads, or employee discipline. *Id.* at 22, ¶ 92.[17]

Mr. Harris trained some grocery employees. *Id.*, ¶ 93. Mr. Harris also provided input regarding employee evaluations and made recommendations regarding raises. *Id.*[18] Mr. Harris' responsibilities included ordering groceries for the store, being

---

[16] Plaintiffs dispute whether Mr. Harris had the authority to make "major decisions" when he was the senior manager onsite. Docket No. 44 at 16, ¶ 91 (citing Docket No. 44-9 at 4, ¶ 25).

[17] Plaintiffs assert that Mr. Harris also did not have the authority to do other duties of the store director, including scheduling and evaluations. Docket No. 44 at 16, ¶ 92 (citing Docket No. 44-2 at 13, 16, 19-20, 46:15-23, 59:23-60:21, 75:25-76:2).

[18] Plaintiffs' response to this fact states, "Disputed . . . Store Director did employee evaluations, compensation and hiring and firing of employees." Docket No. 44 at 16-17, ¶ 93 (citing Docket No. 44-2 at 15-17, 75:13-77:1; Docket No. 44-9 at 3-5, ¶¶ 12-32). This response does not dispute the fact that Mr. Harris provided input regarding employee evaluations and raises. Accordingly, the Court deems this portion of the fact undisputed.

responsible for the money at closing time, counting the safe, and otherwise helping out around the store as needed.  *Id*., ¶ 95.  Mr. Harris also had a set of keys for the Pinedale store.  *Id*., ¶ 96.  Mr. Harris was responsible for merchandising and setting up displays.  *Id*., ¶ 97.

Furthermore, Mr. Harris had the authority to correct unsafe behaviors or situations without input from the store director.  *Id*. at 22-23, ¶ 98.[19]  As an ASM, Mr. Harris attended weekly department head meetings.  *Id*. at 23, ¶ 99.  Mr. Harris also represented Ridley's at two or three trade shows per year.  *Id*., ¶ 100.

### F. Andrez Rios

Mr. Rios was hired by Ridley's as an ASM in May 2019 and he worked at Ridley's store in Wellington, Colorado for approximately three months until he resigned in August 2019.  *Id*. at 25, ¶ 115.  Mr. Rios had significant retail grocery experience, having worked as an assistant manager for Walmart and Safeway.  *Id*.  Mr. Rios' last date of employment at Ridley's was August 9, 2019.  *Id*. at 27, ¶ 123.

As an ASM, Mr. Rios oversaw the perishable department including dairy and frozen foods.  *Id*. at 25-26, ¶ 116.  Mr. Rios was also the senior manager onsite in the absence of the store director and, during that time, Mr. Rios oversaw the entire store. *Id*.[20]  Mr. Rios' duties as an ASM included providing feedback to employees if the

---

[19] Plaintiffs' response to this fact states, "Disputed.  Harris did not have the authority to discipline or fire other employees."  Docket No. 44 at 17, ¶ 98 (citing Docket No. 44-2 at 20-21, 75:13-77:1, 81:19-22; Docket No. 44-9 at 3-5, ¶¶ 12-32).  This response does not dispute the fact that Mr. Harris had the authority to correct unsafe behaviors.  Accordingly, the Court deems this fact undisputed.

[20] Plaintiffs dispute how frequently Mr. Rios was the senior manager onsite.  *See* Docket No. 44 at 19, ¶ 116.

employees were doing something wrong or needed encouragement.  *Id*. at 26, ¶ 117.[21] Mr. Rios' duties also included office work, such as cash reconciliation, counting the cash drawers and putting them in the safe at the end of the day, preparing the bank deposit, and setting up the cash drawers for the next day.  *Id*., ¶ 118.[22]

As an ASM, Mr. Rios' duties included ordering items for and filling the freezer, the dairy, and the non-perishable sections.  *Id*., ¶ 119.  Mr. Rios had the authority to determine how many products to order.  *Id*.  Mr. Rios had responsibility for merchandising, including setting up displays or signage, deciding where items would be displayed, or if the store needed a special display.  *Id*., ¶ 120.  Mr. Rios personally held weekly meetings with department managers where he discussed merchandizing and other product issues.  *Id*. at 27, ¶ 122.

Additionally, Mr. Rios had responsibility for employee and customer safety and store security.  *Id*., ¶ 121.  As he walked around the store, Mr. Rios looked for and resolved safety issues, including wet spills, other slip-and-fall hazards, or overstuffed products on shelves, and Mr. Rios had the authority to direct other employees to remedy the situation.  *Id*.  Mr. Rios was responsible for closing the store, which included checking the bathrooms and each corner of the store, arming the security system, and locking the doors.  *Id*.

---

[21] Plaintiffs dispute whether Mr. Rios had the authority to do scheduling, handle employee complaints, train, hire, discipline, or fire other employees.  Docket No. 44 at 19, ¶ 117.

[22] Plaintiffs' response to this fact states, "Disputed.  Rios' main duty was to stock shelves and other manual labor."  Docket No. 44 at 19-20, ¶ 118 (citing Docket No. 44-4 at 12, 43:10-44:2; Docket No. 44-11 at 2-5, ¶¶ 7-32).  This response does not dispute that Mr. Rios' duties also included office work.  Accordingly, the Court deems this fact undisputed.

G. **Jared Whitaker**

Mr. Whitaker first started working as a stocker at Ridley's store in Provo, Utah beginning in 2013 and ending in 2014.  *Id*., ¶ 124.  In August 2016, Mr. Whitaker was rehired in an hourly position as a closing manager at Ridley's store in Orem, Utah.  *Id*.  In January 2017, Mr. Whitaker was promoted to an ASM at Ridley's store in Highland, Utah, where he worked until he took an hourly position as a clerk on September 2, 2018.  *Id*.  Mr. Whitaker left his employment at Ridley's in October 2018.  *Id*. at 29, ¶ 135.

Mr. Whitaker was the senior manager onsite when the store director was not present, which included the store director's one day off a week and around one hour per day.  *Id*. at 27-28, ¶ 126.[23]  As an ASM, Mr. Whitaker gave instructions to employees. *Id*. at 28, ¶ 127.  Mr. Whitaker also trained, coached, and provided feedback to employees.  *Id*.  Additionally, Mr. Whitaker resolved employee complaints, or escalated complaints to the store director if they were something he could not resolve.  *Id*.[24]

---

[23] Plaintiffs' response to this fact states, "Disputed.  He was not the senior manager on site very often."  Docket No. 44 at 21, ¶ 126 (citing Docket No. 44-5 at 9, 30:19-25).  In the portion of Mr. Whitaker's testimony that plaintiffs cite, Mr. Whitaker estimates that the amount of time he was at the store without the store director was "not very high."  Docket No. 44-5 at 9, 30:19-25.  However, in the portion of Mr. Whitaker's testimony that defendant cites, Mr. Whitaker states that he was at the store without the store director for "an hour at the end of the day," plus the store director's one day off a week.  Docket No. 36-12 at 15, 29:4-19.  Accordingly, the Court deems this fact undisputed.

[24] Plaintiffs' response to this paragraph of facts states, "Disputed.  Whitaker's responsibilities were mainly filling in on the cashier registers, stocking the shelves, ordering the groceries, work in the deli, clean bathrooms.  His responsibilities did not include scheduling, hiring[,] firing, discipline other employees, directing other employees, handling formal employee complaints, evaluations, discipline, pay, budget, coaching or employee safety."  Docket No. 44 at 21, ¶ 127 (citing Docket No. 44-5 at 7-8, 10-16, 23:15-23, 57:4-6, 62:10-22, 26:19-21, 34:15-35:6, 37:16-38:11, 40:15-42:2, 46:13-18, 47:6-48:7, 50:21-53:4, 53:5-7, 53:8-19, 57:9-16, 58:5-11).  A large portion of

Mr. Whitaker helped make sure the store ran smoothly.  *Id.*, ¶ 129.  Mr. Whitaker

had the authority to direct employees to respond to unsafe conditions.  *Id.*, ¶ 128.[25]

As an ASM, Mr. Whitaker sometimes participated in new hire interviews and

provided feedback on interviewees.  *Id.*, ¶ 130.  At least one person Mr. Whitaker

recommended was hired.  *Id.*  Mr. Whitaker participated in the employee evaluation

_____

this statement is unresponsive to defendant's proffered facts.  Plaintiffs' argument that
Mr. Whitaker did not handle "formal employee complaints" does not dispute defendant's
proffered fact that Mr. Whitaker resolved some employee complaints and escalated
complaints to the store director if they were something he could not resolve.  *See*
Docket No. 36-12 at 25-26, 47:6-48:7.  Furthermore, Mr. Whitaker testified that he gave
employees "basic instructions" and showed employees how to use certain machinery.
*Id.* at 24, 44:1-12.  In response to a question about whether Mr. Whitaker ever coached
employees or provided feedback for them, Mr. Whitaker responded, "[s]ure. . . .
coaching was a daily" task.  *Id.* at 26-27, 48:19-49:6.  Accordingly, the Court deems
these facts undisputed.

[25] Plaintiffs' response to this fact repeats plaintiffs' same dispute as to Fact 127.
*See* Docket No. 44 at 21-22, ¶ 128.  The relevant portion of plaintiffs' response states
that Mr. Whitaker's responsibilities did not include "employee safety."  *See id.*  Plaintiffs
appear to cite the same portion of Mr. Whitaker's deposition testimony as defendant.
*See id.* (citing Docket No. 44-5 at 16, 58:5-11).  The questions and testimony state:

> Q: So as Assistant Manager, were you have any responsibilities with regard to
> employee safety?  Anything like that?
> A: I'm going to say not specifically.  That was not a -- like not -- there was no
> specific safety forms or safety seminars or something.  I mean, we all common
> sense wanted to not get hurt at work.
> Q: Right.  So if there's a dangerous condition that you see, I mean, is it within
> your area of responsibility to say hey, wait a minute, you need to do this safer or,
> you know, clean up or find someone to help clean up a spill or something like
> that?
> A.  If I saw a spill, yeah, I would ask someone to go clean that up if I wasn't in the
> ready position to be able to go do that.

Docket No. 36-12 at 33, 58:5-19.  Accordingly, the Court deems this fact undisputed.

process by providing feedback on employees he had knowledge of.  *Id*.  Mr. Whitaker was occasionally asked to offer his opinion regarding employee promotions.  *Id*.[26]

Furthermore, Whitaker's responsibilities as ASM included ordering store inventory.  *Id*., ¶ 131.  To do that, he would access the upcoming ads on the computer to identify what items were going on sale, as that would affect how much he would need to order.  *Id*.  In conjunction with a holiday, Mr. Whitaker had to anticipate additional product needs and order sufficient amounts.  *Id*.  Mr. Whitaker would also consider whether to add or subtract products from an order.  *Id*.  Mr. Whitaker occasionally sat in on conference calls with assistant managers and grocery managers in preparation for big holiday events.  *Id*. at 29, ¶ 134.

Mr. Whitaker had responsibility for the physical facility.  *Id*., ¶ 132.  Mr. Whitaker had store keys and would unlock the store if he was the first to arrive and would lock the store if he was closing.  *Id*.  Mr. Whitaker called police about shoplifters "a couple times."  *Id*.  Mr. Whitaker was responsible for making bank deposits on a regular basis.  *Id*., ¶ 133.

## II.    LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the

---

[26] Plaintiffs' response to this paragraph of facts repeats plaintiffs' same dispute as to Fact 127.  *See* Docket No. 44 at 22, ¶ 130.  The relevant portion of plaintiff's response states that Mr. Whitaker's responsibilities did not include "hiring[,] firing, . . . evaluations . . . [or] pay."  *See id*.  However, plaintiffs' response does not refute defendant's proffered facts that Mr. Whitaker participated in new hire interviews, provided feedback on interviewees, provided feedback for employee evaluations, and occasionally offered his opinion on employee promotions.  Accordingly, the Court deems these facts undisputed.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp*., 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

16

III.     **ANALYSIS**

Ridley's argues that the claims of Mr. Davis, Mr. Gallegos, Ms. Neil, Mr. Wulf, and Mr. Donovan are barred by the statute of limitations.  Docket No. 36 at 29-31. Additionally, Ridley's contends that plaintiffs' FLSA claims should be dismissed because the FLSA's administrative exemption or executive exemption applies to each plaintiff. *Id*. at 32-44.

A.  **Preliminary Issues**

As a preliminary matter, Ridley's argues in its reply that the Court should strike the post-deposition declarations of Mr. Meats, Mr. Donovan, Mr. Harris, Mr. Rios, and Mr. Whitaker because they are "identically worded" and "contrary to prior deposition testimony."  Docket No. 50 at 1-2, ¶ 2 (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

In *Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 973 (10th Cir. 2001), the Tenth Circuit held that the district court did not abuse its discretion in excluding an affidavit that "directly contradicted certain positions previously taken by [the affiant] and which were detrimental to [plaintiff's] sole remaining cause of action" because the circumstances supported a conclusion that the affidavit sought to create a "sham fact issue." (emphasis omitted).  In reaching that conclusion, the court identified three factors relevant to "whether a contradicting affidavit seeks to create a sham fact issue": (1) whether "the affiant was cross-examined during his earlier testimony"; (2) whether "the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence"; and (3) whether "the earlier testimony reflects confusion which the affidavit attempts to explain."  *Id*. (citation

omitted).  However, before applying the *Ralston* factors, a court must determine whether the affidavit at issue directly contradicts the previous deposition testimony.  *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014) (holding that witness's affidavit did not "fit[] the sham affidavit paradigm" because it did not "contain any allegations that would directly contradict [the witness's] earlier deposition testimony" (internal quotation marks omitted)).

Here, Ridley's broadly argues that the declarations of Mr. Meats, Mr. Donovan, Mr. Harris, Mr. Rios, and Mr. Whitaker contradict "prior deposition testimony," *see* Docket No. 50 at 2, ¶ 2; however, Ridley's fails to identify any portion of the relevant deposition testimony that the declarations purportedly contradict.  The Court therefore is unable to determine whether the declarations at issue directly contradict any previous deposition testimony.  *See Knitter*, 758 F.3d at 1218 n.3.  Ridley's also does not address any of the *Ralston* factors.  Moreover, Ridley's provides no authority suggesting that similarly worded declarations should be struck under the *Ralston* test in the absence of any evidence suggesting that the declarations contradict previous deposition testimony.  Accordingly, the Court denies Ridley's request to strike the declarations of Mr. Meats, Mr. Donovan, Mr. Harris, Mr. Rios, and Mr. Whitaker.

###### B.  Statute of Limitations

The FLSA "imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies."  *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (citing 29 U.S.C. § 255(a)).  "A claim accrues under the FLSA when the employer fails to pay the required compensation."  *Coldwell v. Ritecorp Env't Prop. Sols.*, No. 16-cv-01998-NYW, 2017

WL 1737715, at *11 (D. Colo. May 4, 2017) (citing 29 U.S.C. § 255).  "The employee must then commence the action within two years of accrual, or within three years if the cause of action arises out of a willful violation, or the cause of action is barred."  *Id.* (citing 29 U.S.C. § 255(a)).  An action is "commenced" under the FLSA when a party files a complaint.  29 U.S.C. § 256.  However, in the case of a collective action, if a party's name does not appear on the complaint, the action is "commenced" when that party files his or her "written consent" to become part of the collective action.  29 U.S.C. § 256(b); *see also Coldwell*, 2017 WL 1737715, at *11; *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1105 (D. Kan. 2012).

"To fall under the three-year limitation, the plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute.'"  *Mumby*, 636 F.3d at 1270 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (noting that, although the FLSA's statute of limitations is an affirmative defense, the plaintiff has "the burden of persuasion on the willfulness issue").  A plaintiff can establish "reckless disregard" through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Mumby*, 636 F.3d at 1270 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)).

### 1. FLSA Claims of Mr. Davis, Mr. Gallegos, Ms. Neil, and Mr. Wulf

Ridley's argues that the FLSA claims of Mr. Davis, Mr. Gallegos, Ms. Neil, and Mr. Wulf are barred under the statute of limitations regardless of whether the two- or three-year statute of limitations applies.  Docket No. 36 at 30.  Ridley's asserts that it is undisputed that Mr. Davis' last date of employment with Ridley's was in January 2016;

Mr. Gallegos' last date of employment was March 13, 2017; Ms. Neil's last date of employment was in June 2016; and Mr. Wulf's last day of employment was September 24, 2016.  *Id*. at 30-31.  Ridley's argues that it is undisputed that these plaintiffs filed their written consent forms in the *Esparsen* case on the following dates: Mr. Davis (April 14, 2020); Mr. Gallegos (April 6, 2020); Ms. Neil (April 14, 2020); and Mr. Wulf (April 13, 2020).  *Id*. at 30.  Accordingly, Ridley's maintains that Mr. Davis', Mr. Gallegos', Ms. Neil's, and Mr. Wulf's claims all fall outside of both the two- and three-year statute of limitations.  *Id*. at 30-31.

In response, plaintiffs "concede that the claims of Plaintiffs Davis, Gallegos, Neil, and Wulf . . . should be dismissed" as barred under the statute of limitations.  Docket No. 44 at 24-25.  Accordingly, the Court grants this portion of defendant's summary judgment motion and dismisses the FLSA claims of Mr. Davis, Mr. Gallegos, Ms. Neil, and Mr. Wulf with prejudice.  *See Mingo v. Sprint Corp*., 2019 WL 195029, at *3 (D. Kan. Jan. 15, 2019) (noting that dismissal of FLSA claims under the statute of limitations should be "with prejudice").

### 2.  *Mr. Donovan's FLSA Claim*

Ridley's argues that plaintiffs have no evidence to show that Ridley's alleged FLSA violations were willful.  Docket No. 36 at 31.  As a result, Ridley's contends that Mr. Donovan's claim is barred under the two-year statute of limitations.  *Id*.  Ridley's asserts that it is undisputed that Mr. Donovan filed his written consent on April 24, 2020, indicating that his actionable claims only go back to April 24, 2018.  *Id*.  Mr. Donovan's last day of work was April 26, 2018.  *Id*.  Although the last two days of Mr. Donovan's employment fall within the claim window, Ridley's argues that the undisputed evidence

shows that Mr. Donovan did not work at all on April 24 or 25, 2018, only worked 5 hours and 20 minutes on April 26, 2018, and only worked 26 hours that week. *Id*. Accordingly, Ridley's contends that Mr. Donovan has "no claim to overtime hours for the last two days of his employment, and his claims are lapsed as a matter of law." *Id*.

Principally, plaintiffs respond that it is inappropriate for the Court, at the summary judgment stage, to "reach a determination regarding willfulness where the employer's liability for violating the FLSA has not first been established." Docket No. 44 at 25 (citing *Epps v. Scaffolding Sols., LLC*, 2019 WL 3363790, at *12 (E.D. Va. Apr. 2, 2019), *recommendation adopted in part*, 2019 WL 2404329 (E.D. Va. June 7, 2019)). Alternatively, plaintiffs argue that there is a genuine dispute of material fact as to whether Ridley's conduct was willful. *Id*.  With no citation to the record, plaintiffs argue that

> Defendant deliberately classified Plaintiffs as exempt from the overtime requirements of the FLSA and paid them a salary.  As Assistant Store Managers, Plaintiffs were responsible for reviewing inventory, assisting customers, stocking shelves, operating the cash register, cleaning the store, and communicating with other employees.  Defendant knew Plaintiffs did not have authority to interview, hire, fire, or discipline other employees or set other employees' rates of pay or hours.  Defendants knew Plaintiffs did not make recommendations as to the hiring, firing, advancement, promotion, discipline, or other change of status of other employees that would be given particular weight by Defendant.  The evidence before the Court paints a clear picture of Defendant having its Assistant Store Managers work enormous number of hours performing manual labor, while it knowingly, willfully, and/or with reckless disregard carried out its illegal pattern or practice regarding its failure to pay Plaintiffs proper overtime compensation.

*Id*. at 26-27.  In reply, Ridley's responds that plaintiffs failed to provide any "record evidence of willfulness."  Docket No. 50 at 15.

The Court rejects plaintiffs' first argument.  Courts in this District have ruled on whether the two-year or three-year statute of limitations applies to a plaintiff's FLSA

claim at the summary judgment stage.  *See Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-cv-02324-RBJ, 2017 WL 3190740, at *6-7 (D. Colo. July 14, 2017) (holding that the two-year statute of limitations applied because plaintiffs presented no evidence at the summary judgment stage that defendant acted willfully); *Johnson v. Colo. Seminary*, No. 17-cv-02074-MSK-KMT, 2019 WL 4306197, at *8 (D. Colo. Sept. 11, 2019) (holding, at the summary judgment stage, that the three-year limitation period applied to plaintiffs' FLSA claims because it was undisputed that defendant's conduct was willful).

As noted previously, plaintiffs have the burden of establishing that defendant's conduct was willful in order to gain the benefit of a three-year statute of limitations.  *See Mumby*, 636 F.3d at 1270; *Fernandez*, 883 F.3d at 1299.  "To fall under the three-year limitation, the plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute.'"  *Mumby*, 636 F.3d at 1270 (quoting *McLaughlin*, 486 U.S. at 133).  Ridley's has met its burden at the summary judgment stage by arguing that plaintiffs lack any evidence of willfulness.  *See* Docket No. 36 at 31; *see also Bausman*, 252 F.3d at 1115.  Plaintiffs, however, have presented no evidence of willfulness.  *See* Docket No. 44 at 26-27; *see also Bausman*, 252 F.3d at 1115.  With no citation to the record, plaintiffs argue that Ridley's "knowingly, willfully, and/or with reckless disregard carried out its illegal pattern or practice regarding its failure to pay Plaintiffs proper overtime compensation."  Docket No. 44 at 26-27.  This argument is insufficient to raise a genuine dispute of material fact regarding willfulness.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"); *see also* Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v ("Each separately numbered and paragraphed fact shall be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed.").

Because plaintiffs have failed to provide any evidence suggesting that Ridley's acted willfully, the Court finds that the two-year statute of limitations applies to Mr. Donovan's claim. *See Bracamontes*, 2017 WL 3190740, at *6-7; *see also* Fed. R. Civ. P. 56(e)(3) (stating that if a party fails to properly support an assertion of fact, the Court may grant summary judgment on an issue if the motion shows that the movant is entitled to summary judgment).

It is undisputed that Mr. Donovan filed his consent form in the *Esparsen* case on April 24, 2020. Docket No. 36 at 6, ¶¶ 10-11. The two-year statute of limitations therefore bars any claim for unpaid overtime wages before April 24, 2018. *See Bracamontes*, 2017 WL 3190740, at *6 (noting that, when the two-year statute of limitations applies, a plaintiff can only recover unpaid wages in the two years before he filed suit). It is undisputed that Mr. Donovan's last day of employment at Ridley's was April 26, 2018. Docket No. 36 at 14, ¶ 49. Mr. Donovan did not work at all on April 24 or April 25, 2018. *Id*. at 6, ¶ 12. Mr. Donovan worked 5 hours and 20 minutes on April 26, 2018. *Id*. In Mr. Donovan's last week, he only worked 26 hours. *Id*. Under the FLSA, an employer is required to pay an employee overtime if that employee works

more than forty hours in any given week.  29 U.S.C. § 207(a)(1); *see Bracamontes*, 2017 WL 3190740, at \*2.  The Court therefore finds that it is undisputed that Mr. Donovan has no claim to overtime wages for April 24, April 25, or April 26, 2018 because Mr. Donovan did not work over forty hours that week.  Furthermore, Mr. Donovan's FLSA claim, seeking overtime wages prior to April 24, 2018, is barred under the two-year statute of limitations.  Accordingly, the Court grants this portion of defendant's motion and dismisses Mr. Donovan's FLSA claim with prejudice as barred under the statute of limitations.

### 3.  State Law Claims

Ridley's argues that Mr. Wulf's and Mr. Donovan's state law claims fail under the statute of limitations because Colorado employs the same statute of limitations analysis as the FLSA.  Docket No. 36 at 29 n.1 (citing *Hernandez v. Domenico Farms, Inc.*, 414 P.3d 700 (Colo. 2018)).  Plaintiffs do not respond to this argument or discuss Mr. Wulf's or Mr. Donovan's state law claims.  A plaintiff's failure to address a claim in a response to a motion for summary judgment is proper grounds to grant summary judgment in the defendant's favor.  *See Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (unpublished) (affirming district court's holding that plaintiff abandoned his equal protection claim by failing to address the claim in his response to the summary judgment motion).  Furthermore, the Court agrees with Ridley's argument that Mr. Wulf's and Mr. Donovan's state law claims are barred under the statute of limitations for the same reasons as discussed with respect to the FLSA claims.  *See Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789, 793 (D. Colo. 2017) ("Both the FLSA and the CWCA have a two-or three-year statute of limitations, depending on

24

willfulness."); *Coldwell v. RITECorp Env't Prop. Sols.*, No. 16-cv-01998-NYW, 2018 WL 5043904, at *6 (D. Colo. Oct. 17, 2018) ("Like the FLSA, claims under CWCA are generally subject to a two-year statute of limitations unless the conduct was willful in which case a three-year statute of limitations applies." (citing Colo. Rev. Stat. § 8-4-122)).  The Court accordingly grants this portion of defendant's motion and dismisses the state law claims of Mr. Wulf and Mr. Donovan with prejudice.

### C. **FLSA Exemptions**

Under the FLSA, an employer must pay an employee overtime compensation, at a rate not less than 1.5 times the employee's regular rate, for any hours that the employee works in a given week over forty hours.  29 U.S.C. § 207(a)(1); *see also Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-cv-00261-STV, 2023 WL 6929402, at *7 (D. Colo. Oct. 19, 2023).  However, the FLSA contains several exemptions, including the executive exemption and administrative exemption.  *See* 29 U.S.C. § 213(a)(1); *Levine*, 2023 WL 6929402, at *7.

Plaintiffs bear the burden of proving that Ridley's is violating the FLSA.  *See Kelley v. Unisys Corp.*, No. 19-cv-03237-PAB-MEH, 2021 WL 1192932, at *6 (D. Colo. Mar. 29, 2021) (citing *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008)).  However, Ridley's bears the burden of establishing that an employee is exempt under the executive or administrative exemption.  *See id.* (citing *Archuleta*, 543 F.3d at 1233).  In *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018), the Supreme Court altered the long-standing practice of interpreting FLSA exemptions "narrowly."  Instead, the Court held that exemptions should be given a "fair (rather than a 'narrow') interpretation."  *Id.*; *see also Kelley*, 2021 WL 1192932, at *6.  "However, this

holding did not change the fact that it is the employer's burden to establish that an exception to the FLSA applies." *Kelley*, 2021 WL 1192932, at *6 (citing *Wilson v. Schlumberger Tech. Corp.*, No. 17-cv-00281-RBJ, 2019 WL 1916200, *2 (D. Colo. Apr. 24, 2019)).

### 1. Executive Exemption under the FLSA

Ridley's argues that the FLSA's executive exemption applies to Mr. Meats, Ms. Coombs, Ms. Glantz, Mr. Harris, Mr. Rios, and Mr. Whitaker.  Docket No. 36 at 38-39.[27] The FLSA's "executive exemption" applies to "any employee employed in a bona fide executive . . . capacity."  *Kelley*, 2021 WL 1192932, at *6 (quoting 29 U.S.C. § 213(a)(1)).  An "executive" employee is one who is:

(1) Compensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week . . . , exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a); *see also Kelley*, 2021 WL 1192932, at *6.

It is undisputed that Ridley's paid all the plaintiffs more than $684 per week.

Docket No. 36 at 5-6, ¶ 7.  However, plaintiffs contest the second and fourth elements

---

[27] Ridley's also argues that the executive exemption applies to Mr. Donovan, Mr. Gallegos, and Mr. Davis.  Docket No. 36 at 38-39.  The Court declines to address this argument since the Court already dismissed these plaintiffs' claims as barred under the statute of limitations.

of the executive exemption.  Docket No. 44 at 35.  The Court will first address the fourth element.

>    a.  Authority to Hire or Fire; Suggestions Given Particular Weight

To qualify as an executive employee, an employee must have the "authority to hire or fire other employees" or the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a)(4).  In determining

> whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon.  Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs.  It does not include an occasional suggestion with regard to the change in status of a co-worker.  An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105; *see also Kelley*, 2021 WL 1192932, at *9.

Ridley's argues that the undisputed evidence shows that Mr. Meats, Ms. Coombs, Ms. Glantz, Mr. Harris, Mr. Rios, and Mr. Whitaker all made recommendations regarding the hiring, firing, and promotion of employees.  Docket No. 36 at 43-44. Plaintiffs respond that Ridley's has offered no evidence suggesting that plaintiffs had the authority to hire or fire other employees, or that their suggestions as to the hiring, firing, advancement, or promotion of other employees were given "particular weight."  Docket No. 44 at 35-36, 38.  Plaintiffs argue that Ridley's cannot make a conclusory assertion that an employee's suggestion was given particular weight, but rather must "present

some proof that the purported executives' input into personnel decisions was given particular weight" in a specific instance.  *Id*. at 39 (quoting *Madden v. Lumber One Home Ctr., Inc*., 745 F.3d 899, 906 (8th Cir. 2014)).

The Court agrees that Ridley's has offered no undisputed facts suggesting that Mr. Meats, Ms. Coombs, Ms. Glantz, Mr. Harris, Mr. Rios, and Mr. Whitaker had the authority to hire or fire other employees.  *See* 29 C.F.R. § 541.100(a)(4).  Additionally, the Court finds that Ridley's has not demonstrated that it is undisputed that these plaintiffs' recommendations as to the hiring, firing, advancement, or promotion of other employees were given "particular weight."  *See* 29 C.F.R. §§ 541.100(a)(4), 541.105.  It is undisputed that Mr. Meats occasionally sat in on formal employee evaluations, occasionally provided feedback to the store director on pay raises and promotions, and sat in on interviews.  Docket No. 36 at 8, ¶¶ 20-21.  Ms. Coombs interviewed at least one job applicant.  *Id*. at 11, ¶ 31.  Ms. Glantz occasionally sat in on new hire interviews. *Id*. at 20, ¶ 85.  Mr. Harris provided input regarding employee evaluations and made recommendations regarding raises.  *Id*. at 22, ¶ 93.  Mr. Whitaker sometimes participated in new hire interviews, provided feedback on interviewees, and provided feedback on employees in the evaluation process.  *Id*. at 28, ¶ 130.  However, Ridley's offers no evidence as to how frequently Ridley's requested recommendations from these plaintiffs.  *See* 29 C.F.R. § 541.105.  Ridley's also provides no evidence as to how frequently Ridley's "relied upon" the ASMs' recommendations.  *See id*.; *cf. Kelley*, 2021 WL 1192932, at *9 (holding that it was undisputed that plaintiff's recommendations regarding hiring and termination decisions were given "particular weight" because plaintiff interviewed all candidates and selected "which candidate to make an offer to;"

"plaintiff made the decision of which individual to lay off approximately ten times;" and
plaintiff requested the termination of five employees based on performance and HR
approved "all five terminations").  Furthermore, the regulations provide that, "[g]enerally,
an executive's suggestions and recommendations must pertain to employees whom the
executive customarily and regularly directs."  29 C.F.R. § 541.105.  Ridley's offers no
undisputed facts suggesting that the plaintiffs' recommendations pertained to
employees whom the ASMs "customarily and regularly" directed.  *See id.*  In contrast,
plaintiffs offer evidence suggesting that the ASMs were infrequently involved in hiring
decisions and employee evaluations, or the plaintiffs were present at personnel
meetings merely as a witness.  *See* Docket No. 44 at 8, 15-17, ¶¶ 20-21, 85, 93.

The Court finds that there is a genuine dispute of fact regarding whether the
plaintiffs' recommendations were given "particular weight."  *See* 29 C.F.R.
§ 541.100(a)(4); *see also Reyes v. Snowcap Creamery, Inc.*, No. 11-cv-02755-WJM-
KMT, 2013 WL 4229835, at *5 (D. Colo. Aug. 14, 2013) (finding a genuine dispute of
material fact on whether the employer gave "particular weight" to plaintiff's
recommendations because there was evidence suggesting that plaintiff provided only
minimal input on some personnel decisions and was not consulted at all on some
personnel decisions). [28]  As a result, the Court finds that there is a genuine dispute
regarding whether the executive exemption applies to Mr. Meats, Ms. Coombs, Ms.

---

[28] The Court therefore declines to address the parties' arguments on the other
executive exemption elements.  *See* Docket No. 36 at 38-42; Docket No. 44 at 34-37.

Glantz, Mr. Harris, Mr. Rios, and Mr. Whitaker.  The Court denies this portion of Ridley's motion.[29]

### 2.  Administrative Exemption under the FLSA

Ridley's argues that the FLSA's administrative exemption applies to Mr. Meats, Ms. Coombs, Ms. Glantz, Mr. Harris, Mr. Rios, and Mr. Whitaker.  Docket No. 36 at 32.[30]  The FLSA exempts a person employed "in a bona fide . . . administrative . . . capacity."  *Levine*, 2023 WL 6929402, at *12 (quoting 29 U.S.C. § 213(a)(1)).  An "administrative" employee is one who is:

> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week . . . , exclusive of board, lodging or other facilities;

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  It is undisputed that Ridley's paid each plaintiff more than $684 per week.  Docket No. 36 at 5-6, ¶ 7.  The Court therefore turns to the second and third elements.

---

[29] In their response, plaintiffs argue that they are entitled to summary judgment on the executive exemption because defendants offered no evidence on the fourth prong of the executive exemption test.  Docket No. 44 at 39-41.  The Court denies this request.  Plaintiffs did not file a summary judgment motion.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document.").

[30] Ridley's also argues that the administrative exemption applies to Mr. Donovan, Mr. Gallegos, Ms. Neil, and Mr. Davis.  Docket No. 36 at 32.  The Court declines to address this argument since the Court already dismissed these plaintiffs' claims as barred under the statute of limitations.

a.  <u>Primary Duty</u>

The second element of the administrative exemption test is whether plaintiffs' "primary duty" is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."  29 C.F.R. § 541.200(a)(2).  "In FLSA cases, a court must first determine the employee's primary duty, and then determine whether that primary duty disqualifies the employee from FLSA's protections."  *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012).  An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a); *see also Hinely v. Am. Fam. Mut. Ins. Co.*, 275 F. Supp. 3d 1229, 1233 (D. Colo. 2016).  "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  Although the "amount of time spent performing exempt work can be a useful guide" in determining an employee's primary duty, "[t]ime alone . . . is not the sole test."  29 C.F.R. § 541.700(b).  Courts consider the following non-exhaustive factors when determining the primary duty of an employee

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a); *see also Hinely*, 275 F. Supp. 3d at 1233; *Ott v. Chacha in Art LLC*, 506 F. Supp. 3d 1133, 1137 (D. Colo. 2020).  Determining which duty is the "primary duty" is a "question of fact."  *Maestas*, 664 F.3d at 828 ("Because the primary

duty inquiry presents a question of fact, summary judgment is proper only if there [is] no genuine dispute regarding plaintiffs' primary duties.").

Under the regulations, the

phrase "directly related to the management or general business operations" refers to the type of work performed by the employee.  To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment . . . .  Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. §§ 541.201(a)-(b).

Ridley's argues that the plaintiffs' primary duties were "to manage the store for maximum efficiency, stepping in to help and doing whatever was needed."  Docket No. 36 at 34.  Ridley's asserts that each plaintiff performed significant administrative duties including "supervising employees, overseeing inventory purchasing, merchandising, employee/customer/store safety and security, and other activities related to the store's financial success, cash-handling, and customer service."  *Id*. at 38.  Ridley's contends that plaintiffs were hired for the purpose of doing these activities.  *Id*.  Defendant cites two cases in support of its argument that plaintiffs' primary duties were to manage the stores, *Brillas v. Bennett Auto Supply Inc.*, 675 F. Supp. 2d 1164 (S.D. Fla. 2009), and *Stricker v. Eastern Off Road Equip.*, *Inc.*, 935 F. Supp. 650 (D. Md. 1996).  *Id*. at 33-34.[31]

---

[31] The Court finds that both cases are distinguishable.  In *Brillas*, the plaintiff did not oppose the summary judgment motion and conceded that his primary duty was

Plaintiffs maintain that the primary duty of all plaintiffs, and the majority of their work, was "manual labor," including "working on the floor, running cash registers, stocking shelves, cleaning the store, packaging meat, organizing the back room, unloading freight, and providing help in other areas as needed."  Docket No. 44 at 29-30.  Plaintiffs assert that the manual labor occupied about ninety percent of their time.  *Id.* at 30.  Furthermore, plaintiffs argue that other courts have denied summary judgment motions in similar situations.  *Id.* at 30-31 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269-71 (11th Cir. 2008); *Costello v. Home Depot USA, Inc.*, 928 F. Supp. 2d 473 (D. Conn. 2013); *Clougher v. Home Depot*, 696 F. Supp. 2d 285, 291-92 (E.D.N.Y. 2010)).

Neither side directly addresses all of the non-exhaustive factors set forth in section 541.700(a), which guide the Court's inquiry of determining an employee's primary duty, including "the amount of time devoted to each task, the relative importance of each task, the degree of freedom from direct supervision, and the pay relative to subordinates."  *See Maestas*, 664 F.3d at 829 (citing 29 C.F.R. § 541.700).  In determining plaintiffs' "primary duties," the Tenth Circuit has emphasized that "any gaps in the evidence work in plaintiffs' favor."  *Id*.  The Court finds that there are genuine disputes of material fact regarding plaintiffs' primary duties that preclude the entry of summary judgment on the administrative exemption.  It is undisputed that Mr.

---

"non-manual work related to the management" of defendant's business.  *Brillas*, 675 F. Supp. 2d at 1165, 1170.  In *Stricker*, it was undisputed that the plaintiff was the "store manager" and the "highest ranking employee" at the store and, therefore, was responsible for "all of the duties associated with running a retail establishment."  *Stricker*, 935 F. Supp. at 652, 656-57, 659.  In contrast, here, the plaintiffs are not store managers, but rather are assistant store managers.

Meats, Ms. Coombs, Ms. Glantz, Mr. Harris, Mr. Rios, and Mr. Whitaker performed various management duties or office tasks as ASMs, including training and instructing employees, purchasing store inventory, checking emails, making bank deposits, or resolving safety issues.  Docket No. 36 at 8-11, 20-22, 26-29, ¶¶ 19, 22-24, 30, 32, 35, 86-88, 91, 93, 95, 117-119, 121, 127-128, 131, 133.  However, defendants have offered no undisputed facts indicating how much time the plaintiffs spent on the office or non-manual labor tasks.  *See* C.F.R. § 541.700(a)-(b) (discussing how the "amount of time spent performing exempt work" is relevant to the primary duty inquiry, but not dispositive).  Ms. Glantz estimated that the amount of time she spent solely on management-type tasks was about twenty-five percent of her time.  Docket No. 36 at 21, ¶ 89.  Plaintiffs put forth evidence suggesting that most of the ASMs' daily work consisted of manual labor, such as stocking shelves, setting displays, helping as cashiers, unloading freight, helping customers, ordering the groceries, or cleaning the store.  *See* Docket No. 44 at 5, 9, 19-20, ¶¶ 2, 30, 116, 118, 125; *see also Maestas*, 664 F.3d at 830 (holding that, "given [plaintiff's] approximately equal division of time between his field lieutenant and [office] duties, there remain genuine questions about which of his duties are primary" and therefore summary judgment on the administrative exemption was improper).

Although the amount of time devoted to each task is not dispositive, the Court finds that there are also genuine disputes of material fact regarding the other factors in section 541.700(a).  For example, there are disputes of fact regarding plaintiffs' "relative freedom from direct supervision."  *See* 29 C.F.R. § 541.700(a).  Although it is undisputed that the ASMs were the senior managers onsite roughly thirty percent of the

time, *see* Docket No. 36 at 4, ¶ 3, plaintiffs offer evidence suggesting that they had to wait for the store director's approval for major decisions. *See* Docket No. 44 at 7, 16, ¶¶ 16-18, 91. For example, plaintiffs provide evidence suggesting that the store directors created and approved employee schedules, resolved formal employee complaints, conducted employee evaluations, and disciplined employees. *Id*. at 5, 8-9, 15-18, 19, 21, ¶¶ 2, 19, 30, 85, 91-93, 98, 116, 127; *see also Levine*, 2023 WL 6929402, at *11 (holding that, although it was undisputed that plaintiff, an ASM, "spent 50 to 60 percent of his workweek as the highest-raking manager in the store," evidence viewed in the light most favorable to plaintiff indicated that he did not have significant freedom from supervision because the store manager "set schedules ahead of time," "conducted all interviews," and "attended the management conference calls").

Furthermore, defendant provides little evidence suggesting that plaintiffs' exempt duties were more important than plaintiffs' manual labor tasks. *See* 29 C.F.R. § 541.700(a). Defendant offers one statement from Mark Ridley, the president of Ridley's, stating that "the reason [ASMs] were hired" is to "manage all aspects of the store." Docket No. 36 at 4, ¶ 2 (citing Docket No. 36-1 at 3, ¶ 3). However, the Court finds that "a reasonable factfinder could conclude that [plaintiffs'] hourly floor tasks were more important to Defendant than [their] management tasks as an ASM." *See Levine*, 2023 WL 6929402, at *9 (citing *Morgan*, 551 F.3d at 1270 (upholding a jury's finding that store managers were not exempt when those managers performed "[a] large amount of manual labor . . . given each store's limited payroll budget and the large amount of manual labor that had to be performed")); *see also Maestas*, 664 F.3d at 830 (holding that a "singular statement" from a supervisor that plaintiff's "primary

responsibility . . . is to make sure that their people in the field can handle any situation that happens at any time" was insufficient to alter the court's conclusion that there was a genuine dispute of fact regarding plaintiff's primary duties).

Accordingly, the Court finds that there are genuine disputes of material fact regarding whether plaintiffs' primary duties were managing the stores or performing manual labor tasks.  *See Levine*, 2023 WL 6929402, at *12 ("While the evidence establishes that Plaintiff had some degree of involvement in managing store operations, there is a factual issue as to whether this involvement was Plaintiff's 'primary duty' as opposed to his non-exempt manual tasks").  Therefore, Ridley's has not met its burden of establishing its entitlement to summary judgment on the administrative exemption. *See id*.

### b.  Exercise of Discretion and Independent Judgment

Even if Ridley's had met its burden on the second element, Ridley's would still need to establish that there are no undisputed material facts on the third element of the administrative exemption test.  The third element examines whether plaintiffs' primary duties include "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3); *see also Hinely*, 275 F. Supp. 3d at 1236.  "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a); *see also Hinely*, 275 F. Supp. 3d at 1236.  "The term 'matters of significance' refers to the level of importance or consequence of the work performed."  29 C.F.R. § 541.202(a).  The phrase

"discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b); *see also Hinely*, 275 F. Supp. 3d at 1236. The "exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). Furthermore, an "employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 541.202(f).

Ridley's did not address the third prong of the administrative exemption test in its motion. *See* Docket No. 36 at 32-38. Although Ridley's provides some relevant facts in its statement of undisputed material facts section, Ridley's fails to offer any legal argumentation related to the pertinent factors in section 541.202(b). *See id.*; *see also* D.C.COLO.LCivR 7.1(d) (Local Rule providing that all motions must be supported by a "recitation of legal authority"). Ridley's has the burden of establishing that the

administrative exemption applies.  *See Kelley*, 2021 WL 1192932, at *6.  "A moving party who bears the burden at trial 'must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case.'"  *Kluth v. Spurlock*, No. 21-cv-03417-NYW-SBP, 2023 WL 6198894, at *2 (D. Colo. Sept. 22, 2023) (quoting *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008)).  Ridley's failure to address the third element of the administrative exemption test therefore weighs against granting this portion of its summary judgment motion.[32]

Moreover, even if Ridley's had properly advanced a legal argument on this element, the Court finds that the record "is too superficial and conclusory to permit the conclusion that the Plaintiffs exercised independent judgment and discretion" with respect to matters of significance.  *See Maung v. United Food & Com. Workers Int'l Union, Loc. No. 7*, No. 15-cv-01720-MSK-CBS, 2017 WL 11543173, at *6 (D. Colo. Feb. 15, 2017).  It is undisputed that many of the ASMs instructed and trained other employees, purchased inventory, set up store displays, prepared or made cash deposits, opened or closed the building, conducted store inspections, and filled out accident reports.  Docket No. 36 at 7-8, 10, 19-22, 26, 28, ¶¶ 18-19, 22-23, 25, 30, 32, 35, 83, 86-88, 91, 93, 95, 98, 117-119, 121, 127, 131-133.  However, the record "does not establish what degree of judgment or discretion" plaintiffs used in performing those

---

[32] In its reply, Ridley's addresses the third prong of the administrative exemption test.  *See* Docket No. 50 at 17-18.  However, "a party waives issues and arguments raised for the first time in a reply brief."  *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (quotations omitted)).  Accordingly, the Court declines to consider Ridley's arguments in its reply related to whether plaintiffs exercised discretion and independent judgment as to matters of significance.

tasks, such as whether plaintiffs used standardized procedures and forms or whether plaintiffs had to evaluate possible courses of conduct.  *See Maung*, 2017 WL 11543173, at *5 (concluding that the record was insufficient to establish whether the plaintiffs exercised independent judgment and discretion in carrying out their grievance-handling duties; 29 C.F.R. §§ 541.202(a), (e).[33]  Accordingly, the Court finds that Ridley's has failed to show that it is undisputed that plaintiffs used significant discretion and independent judgment in carrying out their primary duties.

As a result, there is a genuine dispute regarding whether the administrative exemption applies to Mr. Meats, Ms. Coombs, Ms. Glantz, Mr. Harris, Mr. Rios, and Mr. Whitaker.  The Court therefore denies this portion of Ridley's motion.

---

[33] For example, Ridley's cites the following portion of Mr. Whitaker's deposition for the proposition that Mr. Whitaker trained employees:

> Sure.  There was plenty of times, you know, if someone was, you know, ready, willing to help.  And, you know, and I asked Becca to, you know, help with the fryer or make a salad or something, right.  And she would, you know, in the beginning it might be, well, where's the knives or what bread can I use, do I just get it off the shelf.  And it's like okay, we'll do it like this.  Come over here, grab something out of the bakery, come over here.  You know, that kind of coaching was a daily really [sic].

Docket No. 36-12 at 26-27, 48:22-49:9; *see also* Docket No. 36 at 28, ¶ 127 (citing Docket No. 36-12 at 26-27, 48:19-49:9).  This evidence alone is insufficient to establish that Mr. Whitaker exercised discretion and independent judgment in training new employees.  *See* 29 C.F.R. § 541.202(a) ("In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.").

IV.      **CONCLUSION**

It is therefore

**ORDERED** that Defendant Ridley's Family Markets, Inc.'s Motion for Summary Judgment [Docket No. 36] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that the FLSA claims of plaintiffs David Davis, Chris Gallegos, Julie Anne Neil, William Wulf, and Brian Donovan are **DISMISSED with prejudice** as barred under the statute of limitations.  It is further

**ORDERED** that the state law claims of William Wulf and Brian Donovan are **DISMISSED with prejudice** as barred under the statute of limitations.  It is further

**ORDERED** that plaintiffs David Davis, Chris Gallegos, Julie Anne Neil, William Wulf, and Brian Donovan are terminated from this case.

DATED March 15, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge