IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.** . 1:22-cv-1070-PAB

STANTON MEATS, JASON CARILLO, KRESTINA
COOMBS, DAVID DAVIS, BRIAN DONOVAN,
CHRIS GALLEGOS, DESTINY GLANTZ,
CAMERON HARRIS, JULIE ANNE NEIL,
ANDREZ RIOS, JARED WHITAKER, AND
WILLIAM WULF,

    Plaintiffs,

v.

RIDLEY'S FAMILY MARKETS, INC.,

    Defendants.

## TRIAL BRIEF OF DEFENDANT RIDLEY'S FAMILY MARKETS, INC.

Defendant Ridley's Family Markets, Inc. ("**Ridley's**"), by and through undersigned counsel, respectfully submits its Trial Brief in anticipation of the trial scheduled in this matter to begin on August 19, 2024.

### I.    INTRODUCTION

Ridley's operates grocery stores in several states including Colorado, Utah, Wyoming, and Idaho. Plaintiffs are all former assistant store directors of Ridley's. Ridley's classified these assistant store directors as exempt under the Fair Labor Standards Act ("FLSA"). Plaintiffs claim the classification was erroneous, and that Ridley's should have paid them overtime. Plaintiffs originally attempted to proceed as an FLSA collective action under the related case *Esparsen v. Ridley's Family Markets, Inc.,* Case No. 1:18-cv-01556-RM, before Judge Moore of this Court. The collective was dismissed, resulting in the current Plaintiffs proceeding separately on

4882-6785-2755

individual bases in this case.[1] The Court previously granted in part and denied in part Ridley's Motion for Summary Judgment, finding no evidence of willful misconduct, and dismissing the claims of five of the original Plaintiffs as time barred. [Dkt. 62.]

The six remaining Plaintiffs contend that they were misclassified as exempt under the FLSA. Ridley's will show at trial that these individuals were properly classified as exempt under the Administrative and/or Executive Exemption of the FLSA.

## II. APPLICABLE LAW

Among other things, the FLSA requires that employers pay their employees an overtime premium of one-and-one-half times the employee's "regular rate" for hours over forty in a workweek. 29 U.S.C. 207(a)(1). Employees working in an "administrative" or "executive" capacity, however, are exempt from the FLSA's overtime requirements. 29 U.S.C. §213(a)(1).

1. **Administrative Exemption Applies to Plaintiffs**

The FLSA's administrative exemption applies to those employees (1) who are compensated on a salary basis of at least $684 per week, and (2) whose "primary duty" consists of performing office or non-manual work directly related to management or general business operations of the employer or the employer's customers and which includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200. This exemption applies across the board.

   a. **Plaintiffs Meet the Salary Basis**

The Court previously determined that there was no dispute that Plaintiffs were paid a salary of not less than $684 per week. [Dkt. 62, p. 30].

   b. **Plaintiffs Meet the Primary Duty Test**

The regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Rather than determining the amount

---

[1] The *Esparsen* case proceeding to a bench trial before Judge Moore, resulting in a verdict in favor of Ridley's [*See,* Dkt. 121 of that case].

of time dedicated to any duty, the determination of an employee's primary duty looks at all of the facts in a particular case. Per the regulations:

> [t]ime alone . . . is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700(b). Thus, any contention that Plaintiffs' "exempt" activities did not constitute a majority of their work is irrelevant.

> The regulations also provide guidance on "management and general business operations:"

> To meet this requirement [of doing work "directly related to management or general business operations"], an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a).

Interpretive caselaw is helpful in the application of these regulations. In *Brillas v. Bennett Auto Supply Inc.,* 675 F.Supp. 2d 1164 (S.D. Fla. 2009), the court determined that an employee who was both an assistant manager and store manager throughout his tenure met the requirements for both the administrative and executive exemptions. With regard to the former, the court found persuasive the employee's responsibilities to complete various store reports, keeping track of such things as inventory, accounting, and cash registers, assisting customers and other employees, helping find the right products, and resolving customer issues. *Id.* at 1170-72. The court determined that Plaintiff was exempt despite evidence that he spent most of his time performing routine non-managerial jobs, stating that "under both tests, numerous courts have held that when considering the question concerning whether management was an employee's 'primary duty,' a more useful question is whether or not the employee's managerial duties constituted the primary value the employer placed on the employee. *Id.* at 1168-69. The evidence at trial will satisfy this test as to all Plaintiffs.

Similarly, in *Sticker v Easter Off Road Equipment, Inc.,* 935 F.Supp. 650 (D. Md. 1996) (cited favorably by *Ott v. Chacha in Art LLC*, 506 F.Supp. 3d. 1133, 1141 (D. Colo. 2020), the court determined that plaintiff, a retail manager, met the administrative exemption, finding persuasive the following duties and responsibilities: organizing charges, balancing the cash register, tracking sales, making the bank deposit, maintaining store displays, opening or closing the store on time, maintaining inventory, supervising other employees and managers, making sure the store was stocked and, either alone or with a co-manager being responsible for the day-to-day operations of the store. As to that point, the court concluded that, even if the plaintiff spent more than half of his worktime performing non-exempt work, his primary duty was to manage the store. *Id.* at 659 ("Because administration of the store had 'special significance relative to the [plaintiff's] other duties,' administration was the plaintiff's 'primary duty.'").

The evidence at trial will show that all of the Plaintiffs' primary duties were to manage the store for maximum efficiency, stepping in to help and doing whatever was needed, including supervising, directing, scheduling, training, monitoring, and assessing significant numbers of employees; being in charge of product merchandising, exercising discretion over displays, and signage; ordering store inventory and monitoring purchases to ensure profitability; opening and closing the store on time, entering sales reports, counting and securing the tills, preparing and making bank deposits, and securing the store; filling out accident and injury and other reports; and participating in management meetings. The evidence will further show that these primary duties involved the exercise of discretion and independent judgment with respect to matters of significance.

2. **Executive Exemption Applies to Plaintiffs**

The FLSA's regulations set forth the broad requirements for the executive exemption, stating that such employees are those (1) who are paid a salary of not less than $684 per week; (2) whose "primary duty" is "management of the enterprise" or a "customarily recognized

department or subdivision thereof;"; (3) who "customarily and regularly direct[] the work of two or more other employees;" and (4) who have the authority to "hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100. As set forth above, Plaintiffs meet the salary basis test.

### a. **Plaintiffs Meet the Primary Duty Test**

The "primary duty" test does not look at the amount of time spent on the duty. Indeed, with particular applicability to the executive exemption, the regulations provide a relevant example with regard to "primary duty:"

> Thus, for example, manager in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty *even if the managers spend more than 50 percent of the time performing nonexempt work such as running the cash register*.

*Id.* at § 541.700(c). Thus, courts applying this regulation have explained that "when considering the question concerning whether management was an employee's 'primary duty,' a more useful question is whether or not the employee's managerial duties constituted the *primary value the employer placed on the employee*." *Brillas v. Bennett Auto Supply, Inc*., 675 F.Supp. 2d 1164, 1168 (S.D. Fla. 2009) (emphasis added); *see also, Baldwin v. Trailer Inns, Inc.,* 266 F.3d 1104, 1115 (9th Cir. 2001) (plaintiffs' "principal value to [defendant] was directing the day-to-day operations of the park even though they performed a substantial amount of manual labor"). The evidence at trial will show that Plaintiffs satisfy this test.

"Management" is defined as well:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the

> techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

The evidence at trial will show that the Plaintiffs' primary duty was "management."

      b.    **Customarily and regularly directed two or more employees.**

As to directing the work of two or more employees, the evidence at trial will show that Plaintiff Meats regularly directed two or more employees *on a daily basis* as part of his responsibilities, and that all of the Plaintiffs regularly supervised the entire store and all of its employees when they were the senior manager onsite—approximately a third of their work time. According to the plain language of the regulations, that supervisory time also meets the numbers threshold, which does not require a "daily" or constant supervisory authority, but only requires that it occur "regularly and customarily." In that regard, the regulations instruct:

> The phrase "customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks.

29 C.F.R. § 541.701.

      c.    **Plaintiffs had authority to "Hire and Fire."**

The evidence will show that Plaintiffs meet also this fourth element. As to this element, there is no strict requirement that Plaintiffs actually have the authority to hire and fire, only that they have some involvement in such aspects of the employment relationship as retention, advancement, promotion and other similar aspects.

Caselaw provides helpful examples as to the breadth of this factor. In *Slusser v. Vantage Builders, Inc.,* 576 F. Supp.2d 1207 (D.N.M. 2008), the court found the following tasks determinative: giving written evaluations of employees and making recommendations regarding

the employees she supervised. *Id.* at 1222-23. Similarly, in *Maestas v. Day & Zimmerman, LLC,* 972 F. Supp.2d 1232 (D.N.M. 2013), the court considered the following evidence relevant: evaluating those the manager supervised, and investigating misconduct and recommending discipline. *Id.* at 1245. In *Burson v. Viking Forge Corp.,* 661 F. Supp.2d 794, 804-05 (N.D. Ohio 2009), the court found persuasive the following evidence: (1) plaintiff's involvement in the interview process; (2) plaintiff made recommendations as to pay increases and promotions; (3) plaintiff gave employees verbal warnings. Similarly, in *Gellhaus v. Wal-Mart Stores, Inc.,* 769 F. Supp.2d 1071, 1082-83 (E.D. Tex. 2011), the court found the following evidence persuasive: (1) part of plaintiff's duties as an assistant manager were conducting "'employee coaching,' which were essentially performance reviews;" (2) some of plaintiff's recommendations were followed regarding hiring and changes in employment status. Application of the rationales in each and all of these cases supports dismissal here.

In *Rozenblum v. Ocean Beach Properties,* 436 F. Supp.2d 1351 (S.D. Fla. 2006), the Court found the fourth prong of the executive exemption to apply to plaintiff despite the following facts viewed in the light most favorable to the employee:  "Plaintiff never hired or fired an employee nor did Plaintiff have the authority to hire or fire any employee. Although Plaintiff often complained to [employer] about the performance of certain employees, he never specifically recommended to [employer] that an employee should be hired, fired, or receive a raise. However, he did report to [employer] about performance problems with employees and recommended that Cohen address these issues. . . . According to [employer], Plaintiff was 'the captain of the ship' when [employer] was not at the hotel. He expected Plaintiff to handle problems as they arose and make the appropriate decisions to solve them." *Id.* at 1355. Finding factual disputes as to whether the plaintiff could hire and fire, the court nevertheless granted the *employers'* motion for summary judgment, finding the second part of the test satisfied, stating that "Plaintiff frequently made suggestions and recommendations as to the hiring and firing of employees which [employer] gave particular weight to." *Id.* at 364. *See also, Calvo v. B & R*

*Supermarket, Inc.,* 63 F. Supp.3d 1369, 1386 (S.D. Fla. 2014) (finding persuasive the following: (1) plaintiff conducted screening interviews using a company outline; (2) plaintiff made recommendations for hiring; (3) continued role in personnel decisions including training and progress; (4) made recommendations as to firing employees.); *Smith v. Brennan,* 115 F. Supp.3d 691, 701-02 (E.D. Va. 2015) (finding persuasive the following: (1) plaintiff had authority to recommend termination or continued employment after 90-day probationary period; and (2) employer relied on Plaintiff's "informal evaluations" of new hires because he was the only one observing them.)

The evidence will show that Plaintiffs, like the *Rozenblum* plaintiff, were the "captain of the ship" for at least nearly a third of the work-week, along with other specific activities showing significant involvement in the hiring, firing, promotion or other status change of employees, and that their suggestions and recommendations were given particular weight by management.

DATED July 31, 2024

SNELL & WILMER L.L.P.

/s/ David P. Williams
David P. Williams (UT#07346)
SNELL & WILMER L.L.P.
15 W. South Temple, Suite 1200
Salt Lake City, Utah 84101
Telephone: 801.257.1900
Facsimile: 801.257.1800
Email: dawilliams@swlaw.com

***Attorneys for Defendant***
***Ridley's Family Markets, Inc.***

**CERTIFICATE OF SERVICE**

This is to certify that on July 31, 2024, a true and correct copy of the above and foregoing document was filed via the Court's electronic filing system, which effected service upon all counsel of record.

/s/ Mindi Mordue